PRECEDENTIAL
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2406
_____

UNITED STATES OF AMERICA

v.

ROBERT FRANZ,
                              Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 12-cr-00003-1)
District Judge:  Honorable Berle M. Schiller
_____

Argued
September 9, 2014

Before:   FISHER, JORDAN, and HARDIMAN *Circuit
Judges*.

(Filed: November 4, 2014)
_____

Richard Q. Hark   [ARGUED]
Hark & Hark
1835 Market Street, Suite 2626
Philadelphia, PA   19103
    *Counsel for Appellant*

Alicia M. Freind   [ARGUED]
Robert A. Zauzmer
Office of United States Attorney
615 Chestnut Street - #1250
Philadelphia, PA   19106
    *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Robert Franz appeals from his conviction in the United States District Court for the Eastern District of Pennsylvania on one count of receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2).  The appeal requires us to decide whether the exclusionary rule applies when agents executing an otherwise-valid search warrant fail to provide to the homeowner a list of items sought.  The appeal also raises questions about a separate warrant for the search of Franz's computer and about several evidentiary issues, including whether evidence that was shown to the jury but later stricken from the case was prejudicial and whether the remaining evidence was sufficient to send the case to the jury.  We will affirm.

2

## I. Background

In 2009, the Bureau of Land Management ("BLM") learned that Franz may have stolen a wooly mammoth tusk and other paleontological items from BLM-managed land in Alaska and smuggled them to his house in Plymouth Meeting, Pennsylvania. The BLM's interest in Franz arose while it was conducting an investigation of Equinox Wilderness Expeditions ("Equinox"), an outfitting and wilderness-guide business suspected of taking expeditions onto protected BLM land without obtaining proper permits or abiding by BLM regulations. The Equinox website displayed several photographs from previous expeditions, including one showing Franz posing with the fossilized mammoth tusk.

As part of the BLM's investigation into Equinox, it sent an undercover agent to participate in one of Equinox's expeditions in June 2009. Franz participated in that trek, and the undercover agent interacted with him on several occasions. Franz volunteered that he had gone on fourteen prior Arctic expeditions since 1988, including four with Equinox. He also noted his appearance on the Equinox website, pointing out that he was "the one holding the mammoth tusk." (App. at 75.) He elaborated that he had a 36-inch mammoth tusk and a 6- to 8-inch mammoth tusk from earlier trips, both on display in his house. Franz conveyed to the undercover agent his ideas on the importance of memorializing their trip, and he offered to collect photographs from the participants in the expedition and assemble a compact disc to send to all of the participants. Based on the evidence obtained from the undercover investigation and from the website, the BLM sought a search warrant for Franz's house.

## A.     The Nardinger Warrant

With the assistance of federal prosecutors, BLM Agent Joseph Nardinger prepared the warrant application. Where the face sheet of the warrant asked for a description of the property that the agents expected to seize, it read, "See attached sheet." One of the attachments, Attachment B, listed a series of items to be seized,[1] including the mammoth tusks, other illegal artifacts, maps of Alaska, financial records, photographs, emails, and any related information contained on computer hard drives or other electronic storage devices. A magistrate judge approved the warrant (the "Nardinger Warrant") on July 30, 2009. The United States Attorney moved to seal the search warrant, affidavit, and accompanying papers, citing "the government's interest in protecting cooperating witnesses, maintaining the secrecy of grand jury investigations, and ongoing criminal investigations." (App. at 66.) The magistrate judge granted the motion.

BLM agents executed the warrant on August 3, 2009. Franz was present at the time, and Nardinger provided Franz with a copy of the face sheet of the warrant. He did not, however, give him copies of the warrant attachments, even when Franz requested them. Nardinger mistakenly believed that, because the warrant and affidavit had been sealed, he could not reveal those attachments. Nardinger nonetheless explained to Franz the circumstances giving rise to the warrant, including the allegation of stealing a mammoth tusk

---

[1] Attachment A contained a detailed description of Franz's house.

4

from protected lands, and he thoroughly described the items the warrant authorized him to seize.

During the search, agents noticed that on the walls of Franz's house were several framed photographs of young, nude girls. And, while searching for other items listed in Attachment B, agents came across pamphlets containing several images of nude minors engaged in sexually explicit conduct.[2] After consulting federal prosecutors for guidance, the agents collected the contraband in plain view. One of the agents briefly examined Franz's computer to determine whether it had too many files to search on site and whether the files were encrypted. In doing so, he noticed a file thumbnail depicting a partially nude girl and saw another file name that suggested the presence of child pornography. The agents seized, among other things, the pamphlets, the computer, and an external hard drive. They then referred the child pornography case to the Federal Bureau of Investigation ("FBI").

### B.    *The Herrick Warrant*

On August 12, 2009, FBI Special Agent Brian Herrick obtained a warrant (the "Herrick Warrant") to search the digital storage devices and other items that the BLM had

---

[2] Franz refers to the evidence as "pamphlets," and the government refers to the same items as "magazines." (Appellant's Opening Br. at 12; Government's Br. at 6.) The District Court generally adopted Franz's characterization, although it sometimes referred to the items as picture books or magazines. For simplicity and consistency with the District Court, we refer to them as pamphlets.

5

seized. The Herrick Warrant was sealed, and the government did not move to unseal it or provide a copy to Franz until thirty-one months after issuance and over two months after Franz's indictment in the present case. The search conducted pursuant to the Herrick Warrant produced two digital images found on Franz's external hard drive that, along with the pamphlets, served as the basis for the charges in the present case: an image labeled 2024372669.jpg (the "202.jpg image") and one labeled 196667053.jpg (the "196.jpg image").

### C.       *Indictments and the Motion to Suppress*

In August 2010, Franz was charged with theft of government property and conspiracy to defraud the United States because of his smuggling of the tusk. He eventually pled guilty to those charges and did not challenge either warrant in that case. Then, on January 5, 2012, a grand jury indicted him for two child pornography crimes: receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2) and (b)(1); and possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B).

In the ensuing prosecution, Franz filed a motion to suppress all evidence collected pursuant to both the Nardinger and Herrick Warrants. Among other things, he argued that the Nardinger Warrant failed to satisfy the Fourth Amendment's particularity requirement. The District Court concluded the warrant was valid at the time it was issued; however, the Court also ruled that because Nardinger did not provide Franz with Attachment B to the warrant, which described the items to be seized, the warrant was facially invalid when it was executed. The Court went on to consider the possible deterrent effect that would be achieved by

6

excluding the evidence in this case and decided that the exclusionary rule did not apply. It based its decision on Nardinger's behavior. Specifically, the Court noted that Nardinger consulted with the United States Attorney's Office in deciding which documents the government would seek to seal, he verbally described to Franz the items to be searched for and seized when executing the warrant, and he allowed Franz to be present during the search. The Court also noted that the warrant was the first that Nardinger had ever prepared or executed. Looking at the totality of the circumstances, the Court determined that Nardinger had no intention to wrongfully conceal the purpose of the search and that the decision to withhold the attachments was a "reasonable misunderstanding" based in part on unclear language in the sealing order. Therefore, the Court concluded, no appreciable deterrent effect would be gained by applying the exclusionary rule.

Franz challenged the Herrick Warrant based on a lack of particularity and probable cause, and he argued that it was tainted by the problems with the Nardinger Warrant. The District Court ruled that the Herrick Warrant appeared valid on its face and that, even if the Nardinger Warrant were invalid, the exclusionary rule did not require suppression of evidence obtained pursuant to the Herrick Warrant. Importantly, Franz's motion to suppress did not include the argument he now advances on appeal: namely, that the government's failure to provide Franz with a copy of the Herrick Warrant and an inventory until thirty-one months after it was executed violated his due process rights and Rule 41 of the Federal Rules of Criminal Procedure. Franz advanced that argument in a motion for reconsideration, which the District Court denied.

7

*D.    Trial*

Franz's trial began on February 11, 2013.    The government presented the two digital images found on Franz's external hard drive: the 202.jpg image, proffered as to the receipt charge; and the 196.jpg image, proffered as to the possession charge.    Donald Justin Price testified for the government as an expert witness in computer forensics.    He stated that he found a deleted internet browser history showing that a user who logged in as "Robert Franz" viewed the 202.jpg image on the internet (App. at 776-78, 807), and later viewed it on Franz's computer in a folder named "Downloads" (App. at 778-80).    Price explained that the 202.jpg image was also "found in a folder named 'Internet Downloads 14'" on Franz's external hard drive.    (App. at 770.)    He further testified that an external hard drive would not automatically name folders or files or assign them numbers.    On cross-examination, defense counsel elicited testimony from Price that, in theory, the image file could have come from anywhere, such as a thumb drive or compact disc.    Nevertheless, Price said that the most likely scenario was that someone viewed it in a web browser and then downloaded and copied it to the external hard drive.    He gave similar testimony regarding the 196.jpg image, noting that he found it "on the external hard drive in a folder called, 'Internet Downloads 5.'"    (App. at 771.)

The government also called as a witness Special Agent James Wines from the FBI Child Exploitation Task Force in New Haven, Connecticut.    He testified that he knew the identity of the girl depicted in the 202.jpg image and that he had actually met with her.    He also testified that he knew the

8

identity of the person who took the picture. The photograph in question, he said, was taken in a bedroom in Greenwich, Connecticut, when the girl was between nine and eleven years old, and it was subsequently uploaded to the internet.

Prior to trial, the government had filed a motion in limine to admit the two pamphlets as evidence for the possession charge. On the back cover of each pamphlet was the following inscription:

> Printed in Denmark
> Copyright 1973
> Color Climax Corporation
> Kastrupvej 124
> 2300 Copenhagen S
> Denmark

(App. at 534.) One of the elements of the crime of possession is that the images at issue have traveled in interstate or foreign commerce. 18 U.S.C. § 2252(a)(4)(B). The government argued that the publication information noted on the pamphlets was sufficient to meet that requirement. The government also argued that the pamphlets were self-authenticating, *see* Fed. R. Evid. 902(7),[3] and admissible

---

[3] Rule 902 states, in part, "The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted: … (7) Trade Inscriptions and the Like. An inscription, sign, tag, or label purporting to have been affixed in the course of business and indicating origin, ownership, or control." Fed. R. Evid. 902(7).

9

under an exception to the rule against hearsay, *see* Fed. R. Evid. 807(a).[4]

Franz objected to the motion in limine, but the District Court granted the government's motion and allowed it to present the pamphlets to the jury. The government displayed selected images from the pamphlets to the jury using an overhead projector and also provided a German-language expert as a witness to testify that the language on the front of the pamphlets was German and that signs visible in the images were in German. No witness, however, was able to prove any additional link to Germany or Denmark beyond the language and the printed inscriptions.

After closing arguments, Franz sought acquittal, arguing that the evidence was insufficient to establish the elements of the crimes charged. Regarding the two pamphlets, Franz argued that the government failed to provide sufficient evidence that they had moved in interstate

---

[4] Rule 807 is the so-called "residual exception" to the hearsay rule and allows for the admission of hearsay under the following circumstances:

> (1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice.

Fed. R. Evid. 807(a).

commerce. The Court denied the motion for judgment of acquittal but agreed that the pamphlets should be struck from the record. Therefore, only the two digital images, one supporting each count of the indictment, remained as evidence.

Immediately after ruling on the motion for judgment of acquittal, the Court informed the jury of its decision and stated that the pamphlets were no longer in evidence:

> I've also granted a motion by the defense to exclude the two pamphlets that you saw because there was no proof of interstate commerce as to those two pamphlets, which the law requires in this kind of case. We heard the agent get on the stand and say they couldn't verify that this came in interstate commerce and so on. The only thing was a copyright with no way of knowing who printed it, what was – and that, to me, is too tenuous a thread, so those two pamphlets are out of the case.

(App. at 845-46.) At Franz's request, the Court then modified the verdict form, striking the portion of the form related to the possession charge insofar as it referred to the pamphlets, and leaving for that charge only a subpart that referred to the second computer image, 196.jpg.

Again at Franz's request, the District Court gave further instructions regarding the pamphlets in its final charge to the jury. First, it instructed the jury not to let the content of any photographic evidence stir passion or prejudice against Franz. The Court said,

11

> Various photographs were admitted in evidence. You should not let the content stir up your emotions to the prejudice of the Defendant. Your verdict must be based on a rational and fair consideration of all the evidence and not on passion or prejudice against the Defendant, the Government, or anyone else connected with the case.

(App. at 878.) The Court immediately followed that instruction with a charge to disregard the pamphlets in reaching its decision:

> I have ordered that all testimony concerning the pamphlets or magazines [be] stricken from the record. This is not proper evidence in this case. You must disregard it entirely. Do not consider this evidence, including the images contained in the pamphlets or magazines in reaching your decision.

(*Id.*) The Court then clarified the evidentiary bases of the remaining charges in the case:

> At the beginning of the trial I described the charges against the Defendant. At this time, the charge of possession of the pamphlets or magazines is no longer before you. … You should not consider or be concerned with, nor should you speculate about the reason the charges are no longer part of this trial. The Defendant is on trial only for the receipt and possession of the computer images. You may

12

> consider the evidence presented in the case only
> as it relates to the remaining charges.

(*Id.*) Franz moved for a mistrial on the basis of the pamphlets being shown to the jury, and, when that was denied, he asked the District Court to repeat the curative instructions. The Court denied that request but noted that the jury would have copies of the curative instructions with them.

After deliberation, the jury found Franz guilty of receipt of child pornography and not guilty of possession of child pornography.[5] Following trial, Franz again moved for

---

[5] It may seem logically inconsistent that Franz was convicted of receipt of child pornography and, at the same time, acquitted of possession. Indeed, our sister circuits have recognized that possession of child pornography under § 2252(a)(4)(B) is a lesser-included offense of receipt of child pornography under § 2252(a)(2). *United States v. Benoit*, 713 F.3d 1, 14 (10th Cir. 2013); *United States v. Brown*, 701 F.3d 120, 127-28 (4th Cir. 2012); *United States v. Muhlenbruch*, 634 F.3d 987, 1003-04 (8th Cir. 2011); *United States v. Schales*, 546 F.3d 965, 977-78 (9th Cir. 2008); *see also United States v. Miller*, 527 F.3d 54, 64 n.10, 71-72 (3d Cir. 2008) (concluding that possession of child pornography under § 2252A(5)(B), which is "materially identical" to possession under § 2252(a)(4)(B), is the lesser-included offense of receipt of child pornography under § 2252A(a)(2), which is "materially identical" to receipt under § 2252(a)(2) (internal quotation marks omitted)). But any seeming inconsistency is explained by the manner in which the government chose to present the case, tying each digital image to a specific charge. The possession charge on which Franz was acquitted was

judgment of acquittal or, in the alternative, for a new trial, both of which the Court denied. On May 13, 2013, the Court sentenced Franz to sixty months imprisonment, five years of supervised release, and a $10,000 fine. This timely appeal followed.

## II. Discussion[6]

On appeal, Franz challenges the District Court's denial of his motion to suppress and his motions for judgment of acquittal or for a new trial. Those challenges, while not without some persuasive force, ultimately fail.

### A. *The Nardinger Warrant and the Motion to Suppress*[7]

The Nardinger Warrant was facially valid when issued but the execution of it violated Franz's Fourth Amendment rights because, as presented to Franz, it did not contain a particularized list of items to be seized. *See Bartholomew v. Pennsylvania*, 221 F.3d 425, 429-30 (3d Cir. 2000) ("[G]enerally speaking, where the list of items to be seized

---

based on conduct separate from that underlying the charge for receipt.

[6] The District Court had jurisdiction under 18 U.S.C. § 3231; we have jurisdiction pursuant to 28 U.S.C. § 1291.

[7] We "review[] the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and exercise[] plenary review of the District Court's application of the law to those facts." *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002).

14

does not appear on the face of the warrant, sealing that list, even though it is 'incorporated' in the warrant, would violate the Fourth Amendment."). The question before us is thus not whether there was a constitutional violation; there was.[8] The question is whether that violation necessitates the suppression of the evidence obtained pursuant to the Nardinger Warrant.

Franz contends that the constitutional defect in the execution of the warrant rendered it facially invalid and that no further analysis is required or allowed. Based on the comment in *United States v. Leon*, 468 U.S. 897 (1984), that "a warrant may be so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid[,]" *id.* at 923, Franz argues that the exclusionary rule applies without exception to facially invalid warrants. He says that the District Court erred by looking beyond the facial invalidity of the warrant and assessing Nardinger's culpability. He further argues that, even if culpability is considered, the exclusionary rule should still apply because Nardinger acted deliberately, in consultation with federal prosecutors.

---

[8] The government concedes a "mistake" was made in light of *Bartholomew*. (Government's Br. at 18.) But it argues that *Bartholomew* was wrongly decided. We need not spend time on that argument; sitting as a panel of this Court, we cannot overrule prior precedent. *Reich v. D.M. Sabia Co.*, 90 F.3d 854, 858 (3d Cir. 1996) ("[A] panel of this court is bound by, and lacks authority to overrule, a [precedential] decision of a prior panel … .").

15

We disagree and hold that there is no need to exclude evidence based on Nardinger's mistake in failing to present Attachment B to Franz in executing the warrant.[9]  More particularly, we reject Franz's argument that a good-faith analysis is unnecessary.  While our case law may not always have been clear on the need to consider good faith,[10] *see United States v. Graves*, 951 F. Supp. 2d 758, 769-71 & n.5 (E.D. Pa. 2013) (discussing *Virgin Islands v. John*, 654 F.3d 412 (3d Cir. 2011), *United States v. Tracey*, 597 F.3d 140 (3d Cir. 2010), and *United States v. Wright*, 493 F. App'x 265 (3d Cir. 2012)), both the Supreme Court's precedents and our own have been consistent in requiring a case-specific analysis of whether the exclusionary rule applies, rather than a categorical approach.

---

[9] Although Attachment A was also withheld, Franz challenges only the withholding of Attachment B.  We limit our discussion accordingly.

[10] A circuit split also exists on the issue of whether an officer's culpability is relevant to an exclusionary rule analysis when dealing with a facially invalid warrant. *Compare United States v. Lazar*, 604 F.3d 230, 237-38 (6th Cir. 2010) (holding that a culpability analysis does not apply when dealing with a facially invalid warrant), *with United States v. Rosa*, 626 F.3d 56, 64-66 (2d Cir. 2010) (concluding that "[n]ot every facially deficient warrant … will be so defective that an officer will lack a reasonable basis for relying on it"), *United States v. Allen*, 625 F.3d 830, 838 (5th Cir. 2010) (same), *United States v. Hamilton*, 591 F.3d 1017, 1028-29 (8th Cir. 2010) (same), *and United States v. Otero*, 563 F.3d 1127, 1133-34 (10th Cir. 2009) (same).

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The exclusionary rule is a prudential doctrine designed to enforce the Fourth Amendment by deterring law enforcement from unreasonable searches and seizures. The rule achieves that end by preventing the government from relying at trial on evidence obtained in violation of the Amendment's strictures. *Davis v. United States*, 131 S. Ct. 2419, 2426 (2011); *United States v. Katzin*, --- F.3d ----, No. 12-2548, 2014 WL 4851779, at *3 (3d Cir. Oct. 1, 2014) (en banc). Because it comes at the cost of hiding often crucial evidence from a fact-finder, though, "[s]uppression of evidence … has always been our last resort, not our first impulse." *Hudson v. Michigan*, 547 U.S. 586, 591 (2006); *see also Leon*, 468 U.S. at 918 (stating that evidence should be suppressed "only in those unusual cases in which exclusion will further the purposes of the exclusionary rule").

In determining whether the exclusionary rule applies, we engage in a cost-benefit analysis, balancing the "deterrence benefits of suppression" against its "'substantial social costs.'" *Davis*, 131 S. Ct. at 2427 (quoting *Leon*, 468 U.S. at 907); *accord Herring v. United States*, 555 U.S. 135, 141 (2009); *Leon*, 468 U.S. at 910. "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 555 U.S. at 144; *accord Katzin*, 2014 WL 4851779, at *4, 17. In other words, "the deterrence benefits of exclusion 'var[y] with the culpability of the law enforcement conduct' at issue." *Davis*, 131 S. Ct. at

17

2427 (alteration in original) (quoting *Herring*, 555 U.S. at 143). When law enforcement "exhibit[s] 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs." *Id.* (quoting *Herring*, 555 U.S. at 144); *accord Katzin*, 2014 WL 4851779, at *4. Similarly, "the exclusionary rule serves to deter … recurring or systemic negligence." *Herring*, 555 U.S. at 144. "But when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion cannot pay its way." *Davis*, 131 S. Ct. at 2427-28 (citations and internal quotation marks omitted); *Herring*, 555 U.S. at 137; *accord Leon*, 468 U.S. at 919; *Katzin*, 2014 WL 4851779, at *4. Indeed, the Supreme Court recently suggested that the absence of culpability is dispositive of the deterrence balancing test. *See Davis*, 131 S. Ct. at 2428-29 ("[T]his acknowledged absence of police culpability dooms Davis's claim.").

In *Leon*, the Supreme Court identified several scenarios in which officers would not be able to establish an objectively reasonable good-faith belief that their actions were lawful, including reliance on a facially deficient warrant:

> [D]epending on the circumstances of the particular case, a warrant may be so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid.

18

468 U.S. at 923.[11]  Franz relies on that language to argue that, because the Nardinger Warrant was facially deficient when it was presented to him, we should automatically apply the exclusionary rule.  Any balancing of costs and benefits has, he says, already been performed by the Supreme Court in *Leon*.  But Franz ignores the introductory language in *Leon*, which conditions its discussion "on the circumstances of the particular case."  *Id.*; *see also id.* at 918 (noting that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis").

The Supreme Court's recent cases concerning the exclusionary rule have focused on the culpability of law enforcement officers, as in *Herring v. United States*, 555 U.S.

---

[11] We have paraphrased those scenarios as follows:

1) where the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;

2) where the magistrate judge abandoned his or her judicial role and failed to perform his or her neutral and detached function;

3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or

4) where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*Tracey*, 597 F.3d at 151.

19

135, 143-45 (2009), and on the knowledge of such officers, as in *Davis v. United States*, 131 S. Ct. 2419, 2428-29 (2011). Those cases are not, however, a departure. The Court's earlier applications of *Leon* also make clear that a fact-specific analysis is required and that the need to weigh the costs and benefits of exclusion is constant. So, for example, while *Leon* dealt with a facially valid warrant, 468 U.S. at 902, the Supreme Court applied the reasoning of *Leon* to a facially deficient warrant in *Massachusetts v. Sheppard*, 468 U.S. 981 (1984), a companion case issued the same day as *Leon*. Rather than categorically excluding evidence due to the facially deficient warrant, the Supreme Court examined the circumstances of the case. *Sheppard*, 468 U.S. at 989-91. The Court focused particularly on the officer's knowledge and actions, including his reliance on the statements of a district attorney and the judge who issued the warrant. *Id.* at 989. The Court ruled that the deterrent purposes of the exclusionary rule would not be served by suppression in that case. *Id.* at 988, 990-91. The Supreme Court's application of *Leon* in *Sheppard* thus forecloses the argument that there is a categorical rule that automatically resolves the question of suppression when there is a facially deficient warrant.[12]

---

[12] Franz ignores *Sheppard* and instead points to *Groh v. Ramirez*, 540 U.S. 551 (2004), a qualified immunity case in which the Supreme Court relied on the "facial deficiency" language in *Leon* to conclude that it would have been clear to a reasonable officer that his conduct was unlawful when he executed a warrant that did not contain a particularized list on its face and the supporting documents were not incorporated by reference. *Id.* at 557, 565. But the Supreme Court did not adopt a categorical rule in *Groh* that ignored the reasonableness of the officer's actions under the

We have, of course, followed the Supreme Court's lead. In *United States v. Tracey*, 597 F.3d 140 (3d Cir. 2010), we addressed the application of the exclusionary rule to a case involving a warrant that failed to incorporate an attached affidavit that would have cured the warrant's lack of particularity. *Id.* at 149. We stated that the "limited exceptions [identified in *Leon*, including the facially deficient warrant exception,] are consistent with the approach taken in *Herring* because each of these circumstances involve conduct that is 'deliberate, reckless, or grossly negligent,' and thus the benefits of deterring future misconduct 'outweigh the costs' of excluding the evidence." *Id.* at 151 (quoting *Herring*, 555 U.S. at 141, 144). We then examined whether the nature of the deficiency in the warrant made the warrant "'so facially deficient' that no reasonable officer could rely on it," *id.* at 152-53, and whether the officer's actions in obtaining and executing the warrant indicated that the deterrent purposes of the exclusionary rule would be served, *id.* at 153.

_____

circumstances. Rather, the Court considered the "glaring" nature of the deficiency and the officer's knowledge and actions – including his preparation of the warrant and the department guidelines that would have alerted him to the deficiency. *See id.* at 563-64. Thus, the Court rejected the officer's argument that he was simply negligent, and concluded that the warrant was "'so facially deficient – *i.e.*, in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid.'" *Id.* at 565 (quoting *Leon*, 468 U.S. at 923). *Groh* does not contradict that an officer's knowledge and actions are important components of a good faith analysis.

21

We took a similar approach in *Virgin Islands v. John*, 654 F.3d 412 (3d Cir. 2011), a case involving a warrant affidavit that did not support a finding of probable cause to search for evidence of the crime listed on the face of the warrant. *Id.* at 413. After determining that one of *Leon*'s four scenarios applied, we turned to the culpability of the officer, determining that "her behavior was, at a minimum, grossly negligent." *Id.* at 420-21. Most recently, in an en banc opinion in a case involving a warrantless search, we rejected the argument that a good-faith analysis is applicable only in certain situations already identified by the Supreme Court. *Katzin*, 2014 WL 4851779, at *9-10 (stating that to apply the Supreme Court's precedent in such a limited manner would "improperly elevate [the Court's previous] holding[s] above the general good faith analysis from whence [they] came").

Franz's argument that a facially deficient warrant renders Nardinger's culpability irrelevant thus runs counter to numerous cases emphasizing that, in examining the totality of the circumstances, we consider not only any defects in the warrant but also the officer's conduct in obtaining and executing the warrant and what the officer knew or should have known.

Nardinger's conduct was, on the whole, objectively reasonable. He sought and obtained a valid warrant and acted in consultation with federal prosecutors. *See Sheppard*, 468 U.S. at 989-90 (highlighting as evidence of reasonableness the fact that the officer consulted with the district attorney and sought a warrant from a neutral magistrate); *Katzin*, 2014 WL 4851779, at *15 (same); *Tracey*, 597 F.3d at 153

22

(same).[13] The District Court found that Nardinger had "no intention of concealing the subject matter of the warrant or the information on Attachment B." (App. at 21.) In executing the search, Nardinger explained to Franz what items the warrant authorized him to search for and seize, and the agents did not exceed the scope of that authorization. *See Tracey*, 597 F.3d at 153 (highlighting as evidence of reasonableness that the agent who led the search told the occupants what he was authorized to search for and limited the search accordingly). While Franz disputes that the search of his home was appropriately limited, he has not established and, given the record, cannot establish that the District Court's finding on that point was clearly erroneous. Finally, the District Court concluded that Franz presented no evidence that the constitutional violation in question was "recurring or systemic." *Herring*, 555 U.S. at 144. Although Franz argues on appeal that "this case is [a] small example of the systemic problems in criminal investigatory practices that are sanctioned through legal counsel" (Appellant's Reply Br. at 5), he has cited no support for that bald assertion. Here, an inexperienced agent made a mistake, but it appears to have been only that: an isolated mistake.[14]

---

[13] Franz appears to argue that consultation with legal counsel somehow makes the officer's actions more culpable. That argument is inconsistent with *Sheppard*, *Katzin*, and *Tracey*. In *Katzin*, however, we cautioned that we should "not place undue weight on this factor" because prosecutors are "not neutral judicial officers." *Katzin*, 2014 WL 4851779, at *15-16 (internal quotation marks omitted).

[14] Franz takes issue with the District Court's finding that this was the first warrant that Nardinger had applied for and executed. But Franz has not shown that this finding is

Our conclusion is confirmed by looking at the magistrate judge's order sealing the attachment, which Nardinger thought prohibited him from showing the attachment to Franz. The order stated that "agents executing the search warrant are authorized, as required by Fed.R.Crim.P. 41(d), to leave a copy of the search warrant and a receipt for the property seized with the person searched or at the property searched." (App. at 68.) As the District Court noted, that language is somewhat unclear, and the officer understood from it that he was authorized to leave the warrant face sheet and an inventory but not the supporting documents. In *Sheppard*, the Supreme Court emphasized that a reasonable officer should be expected to rely on a judge's assurances that a particular course of action is authorized, not to disregard those assurances. *See* 468 U.S. at 989-90 ("[W]e refuse to rule that an officer is required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested.").[15] Even though Nardinger was mistaken, his

---

clearly erroneous.

[15] The state of the law is a relevant, though not the sole, factor in the deterrence analysis. *Davis*, 131 S. Ct. at 2428-29; *Leon*, 468 U.S. at 919; *Katzin*, 2014 WL 4851779, at \*6, 10-17 ("*Davis* did not begin, nor end, with binding appellate precedent. Rather, binding appellate precedent informed – and ultimately determined – the Supreme Court's greater inquiry: whether the officers' conduct was deliberate and culpable enough that application of the exclusionary rule would 'yield meaningfu[l] deterrence,' and 'be worth the price paid by the justice system.'" (quoting *Davis*, 131 S. Ct. at 2428)). Based on *Bartholomew*, Nardinger should have known that he was required to present Attachment B to Franz,

24

reliance on the sealing order mitigates the blame that necessarily follows his error.

In light of the foregoing, we cannot say that Nardinger acted deliberately, recklessly, or with gross negligence in executing the warrant. Nardinger should have shown the attachment to Franz, but that misstep – stemming from his inexperience and misunderstanding of the magistrate judge's order – does not mean that he deliberately violated Franz's Fourth Amendment rights. In short, application of the exclusionary rule would provide little deterrent effect and would not justify the costs of suppression. Therefore, we will affirm the District Court's denial of Franz's motion to suppress the evidence obtained pursuant to the Nardinger Warrant.

---

*see* 221 F.3d at 429-30 ("[G]enerally speaking, where the list of items to be seized does not appear on the face of the warrant, sealing that list, even though it is 'incorporated' in the warrant, would violate the Fourth Amendment."), despite the possibility of rare exceptions to that rule, *see id.* at 430 (acknowledging the "rare case" where sealing may be justified); *United States v. Leveto*, 540 F.3d 200, 211-12 (3d Cir. 2008) (stating that an overbroad warrant was cured by a subsequent search that was limited to the narrower confines of the sealed, unattached, unincorporated affidavit). However, Nardinger's "simple, isolated negligence" does not warrant the heavy price of exclusion. *See Davis*, 131 S. Ct. at 2427-28 ("[W]hen [law enforcement] conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion cannot pay its way." (citation and internal quotation marks omitted)).

### B. The Herrick Warrant and the Motion to Reconsider

Franz also attacks the Herrick Warrant, which authorized a search of the computer drives seized from his house. The Herrick Warrant was sealed, and Franz did not receive a copy of it or its supporting documents until March 2012, thirty-one months after it was executed and just over two months after he was indicted for receipt and possession of child pornography. He contends that the failure to serve the warrant at the time of the search violated Rule 41(f)(1)(C) of the Federal Rules of Criminal Procedure[16] and amounted to a due process violation, so that the evidence obtained from the warrant must be suppressed.

The government responds that Franz waived his challenge to the Herrick Warrant by failing to timely raise it before the District Court. "[A] suppression argument raised for the first time on appeal is waived (*i.e.*, completely barred) absent good cause." *United States v. Rose*, 538 F.3d 175, 182 (3d Cir. 2008) (applying Fed. R. Crim. P. 12). That rule applies "not only where the defendant failed to file a suppression motion at all in the district court, but also where he filed one but did not include the issues raised on appeal." *Id.* (citing *United States v. Lockett*, 406 F.3d 207, 212 (3d Cir. 2005)). Furthermore, "[a] fleeting reference or vague allusion

---

[16] Rule 41 states, "The officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property." Fed. R. Crim. P. 41(f)(1)(C).

to an issue will not suffice to preserve it for appeal[.] Rather, a party must unequivocally put its position before the trial court at a point and in a manner that permits the court to consider its merits." *United States v. Dupree*, 617 F.3d 724, 728 (3d Cir. 2010) (alterations in original) (citation and internal quotation marks omitted).

Franz did not challenge the Herrick Warrant based on Rule 41 until his motion for reconsideration following the District Court's ruling on his motion to suppress. Although he claims that he raised the issue in the motion to suppress itself, that motion challenged the Herrick Warrant based only on arguments of a lack of probable cause and a lack of particularity. During the suppression hearing, defense counsel elicited testimony from a prosecution witness stating that Franz was not served a copy of the warrant until March 2012, but the defense did not argue at that time that the delay amounted to a violation of due process or Rule 41. At the end of the hearing, the District Court asked Franz and the government to provide briefing on the meaning of the language in both the Nardinger and Herrick Warrants authorizing a copy of the warrants to be left with Franz pursuant to Rule 41.

Franz later submitted proposed findings of fact and conclusions of law that included a finding that the Herrick Warrant provided "that agents executing the search warrant [were] authorized as required by Federal Rule of Criminal Procedure 41(d) to leave a copy of the search warrant and receipt for the property with the person searched or at the property searched." (App. at 295.) Franz also proposed a finding that the government had not given him a copy of the Herrick Warrant until March 2012. Franz did not present any

27

legal argument asserting that the delay constituted a basis for relief. Nor did he propose any legal conclusions invoking Rule 41 or due process. Rather, he simply proposed a conclusion that the Herrick Warrant was a "piggy back warrant" that would not have been issued but for the invalid Nardinger Warrant. (App. at 302.) Therefore, the proposed findings did not preserve the issue for appeal because they failed to call it to the District Court's attention and permit the Court to rule on the argument as Franz later advanced it in his motion for reconsideration.[17]

The question thus becomes whether Franz's subsequent motion for reconsideration was sufficient to preserve the issue for appeal. In *United States v. Dupree*, we concluded that raising an argument for the first time in a motion for reconsideration results in waiver of that argument for purposes of appeal. 617 F.3d at 732; *see also id.* at 738 (Fisher, J., concurring in part and concurring in the judgment) (agreeing with the lead opinion's waiver analysis regarding motions to reconsider). We held that the government had "waived its … argument by failing to raise it before the District Court ruled on [the] motion to suppress – *i.e.*, by the 'deadline' set by Rule 12(e)." *Id.* at 732 (lead opinion).

---

[17] The government, on the other hand, submitted proposed findings of fact and conclusions of law stating that the failure to serve the Herrick Warrant on Franz for thirty-one months did not constitute a violation of Rule 41(f). Franz did not respond to that point in his reply to the government's proposed findings of fact and conclusions of law. Nor did Franz respond to that point in a supplemental memorandum, which the docket identified as an affidavit, filed after the hearing in support of his motion to suppress.

28

Furthermore, the government had not established good cause under Rule 12(e) of the Federal Rules of Criminal Procedure for failing to raise the theory earlier.[18]  *Id.*  Under *Dupree*, then, Franz's Rule 41 and due process arguments are waived because he raised them for the first time in his motion for reconsideration, and he has not established good cause for his failure to raise the arguments earlier.[19]

---

[18] Barring Congressional action to prevent the change, the "good cause" exemption now in Rule 12(e) will be relocated to subpart (c)(3) of Rule 12, effective December 1, 2014.  Fed. R. Crim. P. 12 Committee Notes on Rules – 2014 Amendment.  The amendment also removes any reference to "waiver" from what will be subpart (c)(3).  *Id.*  The parties have not raised, and we thus have no occasion to consider, the impact of the amendment on our prior holding that Rule 12 completely bars review.  *See Rose*, 538 F.3d at 184 (concluding that plain error review is unavailable given Rule 12's explicit use of the term "waiver").

[19] In *Dupree*, we concluded that the challenge to the initial ruling on the motion to suppress was waived but the challenge to the denial of the motion for reconsideration was not.  *Dupree*, 617 F.3d at 732.  Thus, while Franz's challenge to the denial of the suppression motion is unpreserved, we may still review the denial of the motion for reconsideration to determine whether his Rule 41 and due process arguments should be considered.  A motion for reconsideration is "not for addressing arguments that a party should have raised earlier."  *Id.* (internal quotation marks omitted).  The purpose of such motions "is to correct a clear error of law or to prevent a manifest injustice in the District Court's original ruling."  *Id.*  Here, the District Court ruled that even if the Herrick Warrant was tainted by the particularity problems in

## C.       *The Pamphlets and Related Motions*[20]

Next, Franz turns to arguments concerning the two pamphlets that the District Court initially admitted but later excluded from evidence.  Graphic pictures from the pamphlets "depict[ing] children being sexually assaulted" (Appellant's Opening Br. at 45) were displayed to the jury, using a projector that enlarged them on a screen.  Franz

---

the Nardinger Warrant, the exclusionary rule should not apply to the Herrick Warrant.  The District Court's analysis thus focused on whether suppressing evidence obtained pursuant to the Herrick Warrant would serve to deter the kind of particularity problems evident in the Nardinger Warrant as presented to Franz.  The requirements of the Due Process Clause and the requirement of Rule 41 that a warrant and inventory be given "to the person from whom, or from whose premises, the property was taken," Fed. R. Crim. P. 41(f)(1)(C), do not establish that the District Court's ruling constituted a clear error of law or a manifest injustice.  We therefore cannot say that the District Court abused its discretion in denying the motion for reconsideration.

[20] Franz does not frame the issues with precision in this part of his argument, but our review is for abuse of discretion, regardless of whether our focus is on the District Court's initial evidentiary ruling, its denial of Franz's motion for a mistrial, or its denial of Franz's motion for a new trial.  *See United States v. Quinn*, 728 F.3d 243, 261 (3d Cir. 2013) (new trial), *cert. denied*, 134 S. Ct. 1872 (2014); *United States v. Self*, 681 F.3d 190, 199 (3d Cir. 2012) (mistrial); *United States v. Vosburgh*, 602 F.3d 512, 537-38 (3d Cir. 2010) (evidentiary issues).

argues that, despite the District Court's ultimate decision to strike the pamphlets from the record, the Court abused its discretion when it initially admitted them and allowed images from them to be published to the jury. He contends that, despite the curative instructions, the pictures displayed from the pamphlets contributed to the guilty verdict on the receipt charge because they have "highly reprehensible and offensive content which might lead a jury to convict on emotion." (Appellant's Opening Br. at 45.)

The government responds that showing the images to the jury was harmless because the District Court ultimately excluded them from evidence and "emphatically and repeatedly told the jury not to consider [them]." (Government's Br. at 50.) The government also argues that the split verdict – guilty for receipt of child pornography but not guilty for possession, the latter being the only charge associated with the pamphlets – indicates that the jury heeded the Court's instructions, thus proving that the admission of the pamphlets was harmless.

"'The test for harmless error is whether it is highly probable that the error did not contribute to the judgment. This [h]igh probability requires that the court possess a sure conviction that the error did not prejudice the defendant.'" *United States v. Cunningham*, 694 F.3d 372, 391-92 (3d Cir. 2012) (alteration in original) (quoting *United States v. Vosburgh*, 602 F.3d 512, 540 (3d Cir. 2010)). The government bears the burden of establishing harmlessness. *United States v. Reynolds*, 710 F.3d 498, 515 (3d Cir. 2013).

Regarding the curative instructions, "'the almost invariable assumption of the law [is] that jurors follow their

31

instructions.'" *United States v. Olano*, 507 U.S. 725, 740 (1993) (quoting *Richardson v. Marsh*, 481 U.S. 200, 206 (1987)). Therefore, "'[we] presum[e] that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them.'" *Id.* (second alteration in original) (quoting *Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985)). But "[c]ases may arise in which the risk of prejudice inhering in material put before the jury may be so great that even a limiting instruction will not adequately protect a criminal defendant's constitutional rights." *Francis*, 471 U.S. at 324 n.9. Such cases present "extraordinary situations." *Id.*; *United States v. Lee*, 573 F.3d 155, 164 (3d Cir. 2009) (identifying the "highly unusual circumstance[]" where the improperly admitted evidence "was the missing link in the prosecution's case"). "The risk that a jury will be unable to follow the court's instruction to ignore information depends on a number of factors including the strength of the proper evidence against the defendant, the nature of the information, and the manner in which the information was conveyed." *Lee*, 573 F.3d at 163. "Absent … extraordinary situations, however, we adhere to the crucial assumption underlying our constitutional system of trial by jury that jurors carefully follow instructions." *Francis*, 471 U.S. at 324 n.9.

Here, immediately after the District Court ruled on the admissibility of the pamphlets, the Court informed the jury of its ruling and stated that the pamphlets were "out of the case." (App. at 845-46.) Furthermore, at Franz's request, the Court gave several instructions relating to the pamphlets in its final charge to the jury. It first instructed the jury not to let the inflammatory nature of the photographic evidence stir up

32

"passion or prejudice." (App. at 878.) The Court immediately followed that instruction with a directive to disregard the pamphlets "entirely" and not to consider them in reaching its decision. (*Id.*) The Court further instructed the jury that the possession-of-child-pornography charge based on the pamphlets was no longer part of the case and that it should only consider the charges of receipt and possession on the basis of the computer images: "The Defendant is on trial only for the receipt and possession of the computer images. You may consider the evidence presented in the case only as it relates to the remaining charges."[21] (*Id.*) The District Court's curative instructions were thus clear, comprehensive, and direct, and, under the circumstances, sufficient to address the difficulty presented by the withdrawal of the pamphlets.

We are not unmindful that child pornography cases are particularly fraught with the danger of unfair prejudice, even before evidence has been admitted, let alone after graphic depictions of abuse have been admitted and then withdrawn. "Child pornography is so odious, so obviously at odds with common decency, that there is a real risk that offenders will be subjected to indiscriminate punishment based solely on the repugnance of the crime ... ." *United States v. Goff*, 501 F.3d 250, 260 (3d Cir. 2007). But there is no *per se* rule that juries are incapable of following instructions when disturbing evidence is involved. *Cf. Cunningham*, 694 F.3d at 390-91 (noting that the admission of videos or images depicting child pornography is not *per se* improper but turns on "the nature

---

[21] While the District Court spoke in terms of "remaining charges," the criminal charges never changed. Only the evidence available to prove the charges was different, so, to be precise, there was no acquittal.

and severity of the acts depicted" (internal quotation marks omitted)). While a bell as horrifyingly loud as that represented by the pamphlet pictures in this case can never be un-rung, that does not mean that a jury cannot be trusted to focus, and be shown to have focused, on the evidence to which it is told to confine its attention. The role of the district court is always to manage the evidence with care commensurate with the rights of the public and the person being prosecuted. The Court here did just that, adjusting its ruling on the pamphlets' admissibility as it thought necessary to protect the defendant, and instructing the jury accordingly. On the present record, it appears highly probable that the repulsive nature of the pamphlets did not undermine the efficacy of the District Court's instructions. *Cf. United States v. Finley*, 726 F.3d 483, 493-94 (3d Cir. 2013) (ruling that the probative value of several videos was not outweighed by the danger of unfair prejudice, even though some of the videos were "extremely disturbing and absolutely prejudicial").

The jury's split verdict confirms that conclusion in this instance. Whether a split verdict supports or undermines a finding of harmless error depends on the circumstances of the case. *Compare United States v. Shannon*, 766 F.3d 346, 352, 359-60 (3d Cir. 2014) (concluding, despite a split verdict, that the prosecutor's comment on defendant's post-arrest silence was not harmless beyond a reasonable doubt because the evidence was "largely circumstantial," "not 'overwhelming,'" and turned on the credibility of the defendant, which was directly undermined by the error), *United States v. Price*, 13 F.3d 711, 730-31 (3d Cir. 1994) (concluding that an erroneous jury instruction was not harmless regarding one defendant because the evidence, "albeit sufficient, was not overwhelming," and noting defendant's acquittal on the

substantive charge in considering the strength of the evidence supporting a defendant's conspiracy conviction), *and United States v. Riggi*, 951 F.2d 1368, 1371-72, 1377 (3d Cir. 1991) (concluding that a split verdict did not render a Confrontation Clause violation harmless beyond a reasonable doubt, because the testimony "may have been dispositive on some counts"), *with United States v. Pelullo*, 14 F.3d 881, 899 (3d Cir. 1994) (stating that "a discriminating acquittal on one of the counts" can constitute "evidence that the jury was able to overcome any prejudice"). *Cf. Connecticut v. Johnson*, 460 U.S. 73, 87 (1983) (plurality opinion) ("[I]f the erroneous instruction was given in connection with an offense for which the defendant was acquitted and if the instruction had no bearing on the [lesser included] offense for which he was convicted, it would be appropriate to find the error harmless.").

Here, the pamphlets were introduced as evidence of the possession charge alone. The verdict form specifically indicated what items of evidence supported each count. The District Court struck the portions of the verdict form referencing the pamphlets, leaving only the part that referenced the 196.jpg image as support for the possession charge, and also leaving the receipt charge, which was based solely on the 202.jpg image. When the jury returned its verdict, it convicted Franz of receipt of child pornography but acquitted him of the possession charge. In other words, Franz was convicted of the charge that the pamphlets were never used to support, and he was acquitted of the charge for which they were used. The totality of the circumstances – including the manner in which the evidence and charges were presented to the jury – strongly suggests that the jury was able to keep

35

the evidence and charges separate in their minds and was not swayed by the prejudicial character of the pamphlets.

Thus, when the split verdict is viewed in light of the relation between the charges and the evidence, as well as the District Court's direct, repeated, and thorough curative instructions, we think it fair to say it is highly probable that any error in the admission of the pamphlets did not contribute to the judgment of guilt on the charge for receipt of child pornography.

### D. Sufficiency of the Evidence and the Post-Verdict Motion for Judgment of Acquittal[22]

Franz's final set of arguments focus on the District Court's denial of his post-verdict motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal

---

[22] "We review *de novo* an appeal of a district court's ruling on a 'Rule 29 motion [for judgment of acquittal] and independently appl[y] the same standard as the District Court.'" *United States v. Freeman*, 763 F.3d 322, 343 (3d Cir. 2014) (second alteration in original) (quoting *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006)). "'A Rule 29 motion for judgment of acquittal obliges a district court to review the record in the light more favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence.'" *Id.* (quoting *Bobb*, 471 F.3d at 494). "Furthermore, 'we review the evidence as a whole, not in isolation … .'" *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (en banc) (quoting *United States v. Boria*, 592 F.3d 476, 480 (3d Cir. 2010)) (discussing the standard for reviewing a post-verdict grant of a motion for judgment of acquittal). Thus, "'[t]he question is whether all the pieces of evidence against the defendant, taken together, make a strong enough case to let a jury find him guilty beyond a reasonable doubt.'" *Id.* at 432 (alteration in original) (quoting *United States v. Cooper*, 567 F.2d 252, 254 (3d Cir. 1977)). "The evidence does not need to be inconsistent with every conclusion save that of guilt if it does establish a case from which the jury can find the defendant guilty beyond a reasonable doubt." *Cooper*, 567 F.2d at 254 (internal quotation marks omitted).

Procedure. He contends that the government failed to establish three elements regarding the receipt charge: a jurisdictional nexus, *mens rea*, and the sexually explicit nature of the digital image.

### 1. *Jurisdictional Nexus*

Section 2252 of the criminal code prohibits the knowing receipt of child pornography that has been transported in interstate or foreign commerce. 18 U.S.C. § 2252(a)(2).[23] Transportation in interstate or foreign

---

[23] Section 2252(a) provides, in pertinent part, as follows:

(a) Any person who –

…
"(2) knowingly receives, or distributes, any visual depiction using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, … if –

(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
(B) such visual depiction is of such conduct;

…

commerce – an essential element of the offense – provides the "jurisdictional nexus" that allows Congress to criminalize the conduct. *United States v. MacEwan*, 445 F.3d 237, 244-45 (3d Cir. 2006). Downloading images from the internet satisfies that element. *Id.* at 246 ("[T]he government is not required to prove that the child pornography images crossed state lines before being downloaded and received by the defendant, but rather only must prove that the images were downloaded from the Internet, which is properly regulated by Congress as a channel and instrumentality of interstate commerce … .").

Franz argues that judgment of acquittal should have been granted because the government presented no evidence that the 202.jpg image was downloaded from the internet. He argues that the image instead "could have come from any external source (thumb drive, [compact disc], or other external media)." (Appellant's Opening Br. at 47.)

Viewing the evidence in the light most favorable to the government, a rational juror could certainly conclude that the government had proven the jurisdictional element beyond a reasonable doubt. Price, the government's computer forensics expert, testified that someone using Franz's computer viewed the image on a website and that, on June 9, 2008, someone viewed the image in a folder called "Downloads," located on his hard drive. Price further testified that, on December 24, 2008, the image was stored to

shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 2252(a).

39

a folder named "Internet Downloads 14" on Franz's external hard drive. Although not direct proof of the actual download itself, Price's testimony presents circumstantial evidence sufficient for a rational juror to conclude that the image was in fact downloaded from the internet. *See Caraballo-Rodriguez,* 726 F.3d at 425 ("Circumstantial inferences drawn from the evidence must bear a 'logical or convincing connection to established fact.'" (quoting *United States v. Cartwright*, 359 F.3d 281, 291 (3d Cir. 2004))); *cf. United States v. Miller*, 527 F.3d 54, 67-69 (3d Cir. 2008) (concluding sufficient evidence of knowing receipt existed despite the lack of any direct, forensic evidence that images had been downloaded on the defendant's computer or that defendant had ever visited child pornography websites).

And if that evidence were not enough, the government presented testimony from an investigator establishing that the image in question was a photograph taken in Connecticut. If we accept Franz's alternative theory as true – that the image was placed on the external hard drive from a thumb drive or compact disc and never downloaded from the internet – the image would still have had to get to Pennsylvania from Connecticut. A rational juror thus could have inferred that Franz received a "visual depiction … that ha[d] been mailed, or ha[d] been shipped or transported in or affecting interstate or foreign commerce, or which contain[ed] materials which have been mailed or so shipped or transported." 18 U.S.C. § 2252(a)(2). Either way, the District Court did not err in denying the motion for judgment of acquittal on the jurisdictional element of the receipt charge.

## 2. *Mens Rea*

Franz also challenges the element of knowing receipt. In *United States v. Miller*, we identified a number of factors relevant to the inquiry of whether receipt of child pornography was accomplished knowingly:

> (1) whether images were found on the defendant's computer; (2) the number of images of child pornography that were found … ; (3) whether the content of the images was evident from their file names ... [;] (4) defendant's knowledge of and ability to access the storage area for the images … [; and (5)] the number of occasions that the images were copied [or downloaded].

527 F.3d at 67, 69 (citations and internal quotation marks omitted). Applying those factors, Franz argues that the evidence was not sufficient to allow a jury to find beyond a reasonable doubt that his receipt of the 202.jpg image was "knowing."[24] We disagree.

---

[24] Franz also argues that the government was required to prove the specific date on which he received the image. We reject that argument. He relies on an unpublished district court case that states, without citation to authority, that when receipt of child pornography is alleged, "the government [is] obliged to prove that the material traveled in interstate commerce, and also the date of receipt." *United States v. MacEwan*, No. CRIM.A.04-262, 2004 WL 3019316, at *1 n.1 (E.D. Pa. Dec. 29, 2004), *aff'd on other grounds*, 445 F.3d 237 (3d Cir. 2006). Proof of the specific date of receipt

41

Two images were found on Franz's computer. The number is admittedly small, and he may not have known the content of the images from file names alone. But Price testified that someone viewed the 202.jpg image on the internet and again in Franz's download folder and then saved it to his external hard drive. That chain of events strongly suggests that whoever received the image did so knowingly. *Cf. United States v. Brown*, 862 F.2d 1033, 1037-38 (3d Cir. 1988) (concluding that evidence of ordering child pornography is circumstantial evidence of knowing receipt of child pornography). Price further testified that Franz's computer had one user-created profile, that Franz lived alone, and that the image was viewed on the computer when the user was logged in as Franz. Finally, Price testified that the folder "Internet Downloads 14" – which was stored on the root drive of the external hard drive and would have been visible to

would doubtless strengthen the overall evidentiary picture for purposes of establishing the defendant's *mens rea*. But when Congress has not identified time as an essential element of an offense, "proof of the acts charged on any date within the statute of limitations and before the return date of the indictment is sufficient to support a conviction." *United States v. Somers*, 496 F.2d 723, 745 (3d Cir. 1974) (addressing variances between indictment and proof). Furthermore, "[b]y the use of the qualifying phrase 'on or about', the grand jury indicates its unwillingness to pinpoint the date of the offense charged." *Id.* Here, the indictment charged Franz with knowing receipt "[o]n or about June 9, 2008." (App. at 44.) Price testified that someone using Franz's computer viewed the image on a website, and then on June 9, 2008, someone viewed the same image on Franz's computer in a folder titled "Downloads." That is enough.

anyone who used that device – was not created or named by default; rather, someone created and named the file folder. Thus, three of the five *Miller* factors (the first, fourth, and fifth) point to Franz knowingly receiving the image in question. Because a rational juror could conclude, based on that evidence, that Franz knowingly received the image, his Rule 29 challenge fails. Viewing the evidence as a whole, a rational jury could – and did – conclude that Franz knowingly received the image at issue.

### 3. *Sexually Explicit Conduct*

Finally, Franz challenges the sufficiency of the evidence to establish that the 202.jpg image was child pornography. That picture is of a nine- to eleven-year-old girl, fully nude, sitting on a bed, with her legs spread and her genitals exposed. The minor's head, arms, and legs are cropped from the picture.

To be guilty of knowing receipt of child pornography, the visual depiction must be "of a minor engaging in sexually explicit conduct." 18 U.S.C. § 2252(a)(2)(A), (B). The statute defines "sexually explicit conduct" as including "lascivious exhibition of the genitals or pubic area of any person." *Id.* § 2256(2)(A)(v). In determining whether a visual depiction involves "lascivious exhibition of the genitals or pubic area," we have adopted what have come to be called the *Dost* factors:

> "1) whether the focal point of the visual depiction is on the child's genitalia or pubic area; 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place

43

> or pose generally associated with sexual
> activity; 3) whether the child is depicted in an
> unnatural pose, or in inappropriate attire,
> considering the age of the child; 4) whether the
> child is fully or partially clothed, or nude; 5)
> whether the visual depiction suggests sexual
> coyness or a willingness to engage in sexual
> activity; 6) whether the visual depiction is
> intended or designed to elicit a sexual response
> in the viewer."

*United States v. Villard*, 885 F.2d 117, 122 (3d Cir. 1989) (quoting *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987) *and aff'd*, 813 F.2d 1231 (9th Cir. 1987)). The sixth factor is not "a separate substantive inquiry about the photographs." *Id.* at 125. Rather, it is simply "useful as another way of inquiring into whether any of the other five *Dost* factors are met." *Id.* Furthermore, "the *Dost* factors are not dispositive and serve only as a guide." *United States v. Larkin*, 629 F.3d 177, 182 (3d Cir. 2010); *see also United States v. Knox*, 32 F.3d 733, 746 n.10 (3d Cir. 1994) ("The analysis is qualitative and no single factor is dispositive."). "In addition to the considerations detailed in *Dost*, we are guided by Black's Law Dictionary, which defines 'lascivious exhibition' as a depiction which displays or brings forth to view in order to attract notice to the genitals and pubic area of children, in order to excite lustfulness or sexual s[t]imulation in the viewer." *Larkin*, 629 F.3d at 182 (internal quotation marks omitted). "We may also consider any other relevant factors given the particularities of the case." *Id.* (internal quotation marks omitted).

44

According to Franz, "the setting of the visual depiction is not alone sexually suggestive, although the background is in a bed room" (Appellant's Opening Br. at 54); the minor is not inappropriately attired considering the age of the child; the nature of the pose cannot be determined from the image because the child's head, arms, and legs are cropped from the picture; "absent any expression, look, or even gesture the depiction can suggest nothing at all," let alone sexual coyness or a willingness to engage in sexual activity (Appellant's Reply Br. at 15); and the picture is not intended or designed to elicit a sexual response in the viewer.

His arguments are wholly unpersuasive. This is no mere baby-in-the-bathtub picture. Common sense and consideration of the *Dost* factors are enough to lead to the conclusion that the picture shows a minor engaging in sexually explicit conduct. First, the focal point of the image is the child's genitals. Second, the image depicts a child in a bedroom, sitting on a bed, thus placing the image in a sexually suggestive setting. *Villard*, 885 F.2d at 124 (identifying a bed or mattress as a place commonly associated with sexual activity, though that alone is not enough to establish lasciviousness). Third, the child's legs are spread and her genitals exposed, thus depicting a pose often associated with sexual activity. *See Knox*, 32 F.3d at 747 (concluding that pictures exhibited sexually explicit conduct when, among other things, the minors "were shown specifically spreading or extending their legs to make their genital and pubic region entirely visible to the viewer"). Fourth, although it is true the child is not wearing any sexually suggestive clothing, that is because she is wearing

nothing at all.[25]  Fifth, sitting on a bed nude with legs spread can be understood as suggesting a willingness to engage in sexual activity. *Cf. United States v. Amirault*, 173 F.3d 28, 33 (1st Cir. 1999) (concluding that a girl's posture did not demonstrate a willingness to engage in sexual activity because, among other facts, "her legs are not widespread"). Sixth, all of the facts addressed above suggest that the image was intended to elicit a sexual response in the viewer.[26]

---

[25] Franz argues that the image is protected speech – rather than child pornography – because it is a "'depiction[] of nudity, without more.'"  (Appellant's Reply Br. at 16 (alteration in original) (quoting *Osborne v. Ohio*, 495 U.S. 103, 112 (1990)); *see also* Appellant's Opening Br. at 54.) As our discussion of the *Dost* factors indicates, the image is not simply a "depiction[] of nudity, without more." *Osborne*, 495 U.S. at 112.

[26] Franz claims that the depiction in this case is similar to the one at issue in *United States v. Amirault*, in which the First Circuit concluded that a photograph was not sexually explicit because, even though it depicted a minor's genitals, "there is no zooming in on the genitals and the focus is not on the genital area." (Appellant's Opening Br. at 54.)  Franz's attempt to align his case with *Amirault* is unavailing. *Amirault* addressed whether "a photograph of a young naked female, probably a teenager, standing or kneeling in a hole on a beach" depicted "sexually explicit conduct."  173 F.3d at 30.  Applying the *Dost* factors, the First Circuit concluded that the photograph did not depict sexually explicit conduct. *Id.* at 33.  The court thrice noted the fact that the girl's legs were not widespread – as it discussed the focus of the photograph, the girl's pose, and whether the girl's expression or posture demonstrated a willingness to engage in sexual

The nature of the 202.jpg image is certainly such that a rational juror could conclude beyond a reasonable doubt that the image depicted "lascivious exhibition of the genitals or pubic area," 18 U.S.C. § 2256(2)(A)(v), and thus satisfied the requirement that the image depict "a minor engaging in sexually explicit conduct," *id.* § 2252(a)(2)(A), (B).

## III. Conclusion

For the foregoing reasons, we will affirm the judgment of conviction.

---

activity. *Id.* The court also noted that the setting was "unlike a bedroom." *Id.* Thus, the image in question here is different from that discussed in *Amirault* in significant ways.