**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-4454

UNITED STATES OF AMERICA

v.

LACEY GRAVES,
                                  Appellant
(D.C. Crim. No. 06-cr-00095-1)

No. 08-4183

UNITED STATES OF AMERICA

v.

LACEY GRAVES,
                                  Appellant
(D.C. Crim. No. 92-cr-00298-001)

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
District Judges:  Honorable Jan E. Dubois; Honorable James T. Giles

Submitted Under Third Circuit LAR 34.1(a)
March 11, 2010

Before: BARRY, JORDAN and VAN ANTWERPEN, Circuit Judges

(Opinion Filed:  April 13, 2010)

OPINION

BARRY, Circuit Judge

Lacey Graves appeals his conviction by a jury of armed bank robbery (No. 07-4454) and the additional term of supervised release imposed following his term of imprisonment on that conviction (No. 08-4183). Graves's attorney in each of the cases has filed a motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967). Graves has filed a *pro se* brief in each case.

## I.

The parties are familiar with the facts, and so we include only those necessary to decide this appeal. Moreover, because the arguments raised on appeal emanate from two different cases, we address the arguments made in each of the cases and the related facts in separate sections of this opinion.[1] At the outset, we note that attorneys, when seeking to withdraw pursuant to *Anders*, must "satisfy the court that [they have] thoroughly examined the record in search of appealable issues, and . . . explain why the issues are frivolous." *United States v. Youla*, 241 F.3d 296, 300 (3d Cir. 2001). They have done so here.

Graves has raised numerous issues in his *pro se* filings, all of which we will

---

[1] We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

2

address. Two of those same issues and two additional issues have been raised by one or both of his attorneys. We will address those additional issues as well.

## II.

On September 29, 1992, Graves pled guilty to three counts of armed bank robbery. On March 17, 1993, Judge Giles imposed a sentence of 96 months' imprisonment and a five-year term of supervised release. Before the supervised release period expired, Graves was arrested in connection with an armed bank robbery that occurred on January 18, 2006. After two mistrials, he was convicted in November 2007. On July 8, 2008, Judge DuBois sentenced him to 180 months' imprisonment and a five-year term of supervised release. This conviction is the subject of the first appeal (No. 07-4454).

As a result of the November 2007 conviction, Judge Giles found that Graves violated a condition of the supervised release that had been imposed in 1993,[2] and supervised release was revoked. Judge Giles resentenced Graves to two years' imprisonment, followed by a one-year period of supervised release, with both the imprisonment and supervised release to run concurrently with the sentence imposed by Judge DuBois in July 2008. The supervised release component of the sentence imposed by Judge Giles for the violation is the subject of Graves's second appeal (No. 08-4183).

---

[2] A condition of the supervised release imposed in 1993 was that "[w]hile on supervised release, the defendant shall not commit another federal, state, or local crime . . . ." (Supp. App. at 804.)

3

**A.**

We briefly dispose of Graves's arguments addressed to the sentence imposed for the violation of supervised release. He argues, first, that "in accordance with 18 U.S.C. § 3583(e) the Court was precluded from resentencing him to [an] additional term of supervised [release] after a term of imprisonment," and that doing so pursuant to 18 U.S.C. § 3583(h) would violate the *ex post facto* clause of the U.S. Constitution. (Graves's 08-4183 Br. at 10.)

In 2000, the Supreme Court held that "§ 3583(e)(3) before its amendment and the addition of subsection (h) leaves open the possibility of supervised release after reincarceration." *Johnson v. United States*, 529 U.S. 694, 713 (2000). "[I]n applying the law as before the enactment of subsection (h), district courts have the authority to order terms of supervised release following reimprisonment." *Id.* Accordingly, Graves's argument is without merit.

Graves also argues that the District Court erred in finding that his conviction for armed bank robbery violated a condition of supervised release. We disagree. A violation of supervised release need only be proven by a preponderance of the evidence. 18 U.S.C. § 3583(e)(3); *United States v. Dees*, 467 F.3d 847, 854-55 (3d Cir. 2006). Neither a conviction nor an indictment is *required* to show that a defendant has violated a condition prohibiting the commission of a crime. *United States v. Poellnitz,* 372 F.3d 562, 566 (3d Cir. 2004). Rather, what matters is that the defendant "committed that crime as a matter

4

of fact." *Id.* at 567. Much as Graves may question the jury's verdict, a jury verdict *is* a factual finding.

**B.**

Graves next raises various contentions relating to his November 2007 conviction for armed bank robbery. We briefly summarize the evidence to provide context. On January 18, 2006, Graves entered a Univest Bank located in Warminster, Pennsylvania and, while carrying a handgun, jumped over the teller's counter and took $6,421.00 in cash. Prior to the robbery, a bank employee observed a "suspicious" woman with a scarf over her head "looking into the glass [lobby] doors, trying to obstruct her face." (App. II, No. 07-4454, Day 2 Tr. at 38.) Another employee attempted to write down the license plate number of the woman's Isuzu Rodeo before the woman drove out of the parking lot.[3] Shortly after the woman's departure, Kim Buckley, another employee, looked out the window and saw a man approach the bank. The man disappeared from Buckley's view, but then, as she watched the television surveillance monitor, she saw him enter the bank, jump over the counter, and take money out of a teller's drawer. Buckley and yet another employee, Nancy Seuffert, testified that the man pointed a gun at Tara Detweiler, a teller, while she was on the ground. Detweiler testified that while bending over to open the coin vault, she could "see [the gun] at my face, but it wasn't pointed towards me."

---

[3] The recorded number was checked against the Pennsylvania Department of Motor Vehicles registry, and after changing the plate number from what the employee had recorded – GEF-4597 – to GFF-4597, the investigator learned that the vehicle was registered to Lacey Graves.

5

(*Id.* at 105.) Buckley selected Graves's picture from a photo array and identified him at trial.

Michael Smith, a forensic examiner with the FBI specializing in shoe print examinations, testified regarding a shoe print recovered from the teller's counter. The government's theory was that the shoe print matched the men's size eleven New Balance sneakers found in the home of Graves's girlfriend, Leslie Neal.[4] Smith testified that the print was consistent with the sneakers, but on cross examination conceded that "it is also very possible that these sneakers did not leave the prints that were found on the countertop." (*Id.* at 92-93.) One witness, Kimberly Krapf, filled out a robbery description sheet on the day of the robbery, and circled a picture of a boot in the section identifying the suspect's items of clothing. At trial, she explained that "that's what I recalled at that time and that was probably the . . . closest picture to what he was wearing." (*Id.* at 60.)

During closing argument, the prosecutor summarized Smith's testimony and stated that "I suggest . . . it's a match, just not an exclusive match. That New Balance sneakers just like his did that mark . . . ." (App. III, 07-4454, Day 4 Tr. at 8.) Following an objection, the District Court reminded the jury that notwithstanding what was said, what is important is "what you recall about the evidence." (*Id.*) The government then went on to explain that "we're not suggesting that [Smith] linked what he found to the defendant .

---

[4] Graves's trial attorney agreed that the sneakers belonged to Graves.

. . [w]e're not suggesting to you . . . that this case is resolved by that evidence, but that evidence . . . must be put into context with everything else in the case and it has value to you." (*Id.* at 9.) Later, the Court instructed the jury that "[w]ith respect to any fact matter, it is your recollection and yours alone that governs. Anything that counsel . . . may have said with respect to any factual matter . . . is not to be substituted for your own independent recollection." (*Id.* at 67-68.)

**1.**

Graves argues that admitting the sneakers into evidence was prejudicial, and that the government mischaracterized Smith's testimony.

The District Court did not commit plain error in admitting the sneakers. *United States v. Moore*, 375 F.3d 259, 261 (3d Cir. 2004). Smith clearly stated that he could not be certain that the shoe print on the counter matched the New Balance sneaker but that "the footwear impression, impression in Government Exhibit 5.5 [i.e., the print left on the teller's counter] . . . corresponds in design and approximately physical size with Government Exhibit 7.1 [i.e., the left New Balance sneaker]." (App. II, 07-4454, Day 2 Tr. at 77.) There is nothing to indicate that the jury was in any way misled. Indeed, when the government appeared to overstate the connection between the shoe print and the sneaker, the Court was quick to correct it.[5]

---

[5] To the extent Graves argues that the government improperly minimized Krapf's circling of the image of a boot on the form she completed, we note her testimony that at the time she "wasn't really focused on filling out the description sheet." (App. II, 07-4454, Day 2 Tr. at 49.)

**2.**

Graves next argues that the District Court lacked jurisdiction to try his case because he never received a signed copy of the indictment, and seems to suggest that no such document exists. A signed copy of the indictment appears in the government's supplemental appendix. (Supp. App. at 849-50.)

**3.**

Graves argues that the government engaged in prosecutorial misconduct by including Leslie Neal on its witness list, but then failing to call her as a witness at trial.[6] Although he concedes that the government was under no obligation to call Neal, he claims that by not calling her, and instead advancing the theory that Neal conspired with Graves by "casing" the bank, the government invited the jury to make improper inferences about his guilt.

There was ample evidence that a woman had "cased" the bank. A bank employee testified that a suspicious woman wearing a headscarf was peering through the bank windows. Another employee was concerned enough about her co-worker's reaction to the woman that she copied down the license plate of the vehicle that the unknown woman was driving. Later investigation revealed that the vehicle was registered to Graves. Given this evidence, it was fair for the government to argue that "putting a scarf over

---

[6] Graves has not shown how the Court's failure to instruct the jury that the government could have called Neal as a witness "had a prejudicial effect on the jury's deliberations so as to produce a miscarriage of justice" against him. *United States v. Guadalupe*, 402 F.3d 409, 415 (3d Cir. 2005).

your face and looking in [to a bank] and . . . then walking to a car . . . coupled with the commencement of an armed robbery shortly thereafter tells you circumstantially that that woman was there casing the bank." (App. III, 07-4454, Day 4 Tr. at 25-26.) And, of course, there was also evidence that after his arrest, Graves entrusted his personal belongings and the keys to his Isuzu Rodeo to Neal, that he spent time at her apartment, and that some of his clothing and his sneakers were found there. In sum, the evidence and all reasonable inferences therefrom pointed to Neal as the woman who "cased" the bank, and we reject Graves's argument that the government advanced a theory of the case that had no support.

**4.**

Graves argues that there was insufficient evidence presented at trial to support his conviction on the armed bank robbery charge.

We note Graves's "very heavy burden" in arguing that there was insufficient evidence to support his conviction, *United States v. Leahy*, 445 F.3d 634, 657 (3d Cir. 2006), and we "view the evidence in the light most favorable to the government," *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998). We need not reprise the evidence we have discussed above. Suffice it to say, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," as the jury did here. *See Dent*, 149 F.3d at 187.

**5.**

In his *Anders* brief, Howard Popper, Esq., raises two potential issues in No. 07-4454, both of which we reject. As to the first issue, the "dangerous weapon" referenced in 18 U.S.C. § 2113(d) need not be shown to be real or operable in order to sustain a conviction. *See United States v. Beckett*, 208 F.3d 140, 152 (3d Cir. 2000) (finding that fake bombs reasonably instill fear in average citizens and qualify as dangerous weapons under 18 U.S.C. § 2113(d)). As to the allegation that Graves's trial counsel was ineffective for stipulating that the bank at issue was FDIC insured, "[i]t has long been the practice of this court to defer the issue of ineffectiveness of trial counsel to a collateral attack." *United States v. Wise*, 515 F.3d 207, 215 (3d Cir. 2008) (quoting *United States v. Thornton*, 327 F.3d 268, 271 (3d Cir. 2003)). We see no reason to depart from that practice here.

In No. 08-4183, Michael J. Engle, Esq., raises the same two issues Graves has raised with reference to supervised release. We have found those issues to be without merit, and will not repeat our discussion here.

**III.**

We will affirm the judgments of the District Court. We will grant counsels' motions to withdraw in separate orders.