**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 14-1558

———————

UNITED STATES OF AMERICA,

v.

MICHAEL WRIGHT,

Appellant

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania

(D.C. Crim. No. 5-09-cr-00270-001)

District Judge: Honorable Lawrence F. Stengel

———————

Submitted Under Third Circuit L.A.R. 34.1(a)
on October 21, 2014

Before: AMBRO, FUENTES, and NYGAARD, *Circuit
Judges*

(Filed: February 6, 2015)

Robert A. Zauzmer, Esq.
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

Kishan Nair, Esq.
Office of United States Attorney
504 West Hamilton Street
Suite 3701
Allentown, PA 18101
        *Attorneys for Appellee*

Mark S. Greenberg, Esq.
13 Terrace Road
Plymouth Meeting, PA 19462
        *Attorney for Appellant*

---

OPINION

---

FUENTES, Circuit Judge.

We recently confronted the question of whether suppression is required when a law enforcement officer obtains a valid search warrant but mistakenly interprets a judge's sealing order as prohibiting him from showing the list of items to be seized to the person whose property is being searched. *See United States v. Franz*, 772 F.3d 134 (3d Cir. 2014). This case presents the related question that arises when, as a result of a sealing order, the list of items to be

2

seized is *inadvertently* omitted from the warrant when it is executed.

## I. Background of the Case

Having gathered significant evidence of Michael Wright's ongoing conspiracy to distribute marijuana, the United States Attorney's Office for the Eastern District of Pennsylvania prepared a warrant application for the search of Wright's apartment. In the portion of the warrant identifying the items to be seized, the warrant referred to an attached affidavit of probable cause prepared by Drug Enforcement Agency Task Force Agent Jeffrey Taylor. The affidavit summarized the Government's knowledge of the conspiracy and stated that Agent Taylor expected to find further evidence in Wright's apartment, including drugs, money, and documents such as ledgers and telephone lists.

A federal magistrate judge approved the application, signing both the warrant and the attached affidavit. Before the warrant was executed, however, the affidavit was removed at the request of the U.S. Attorney's Office and sealed in order to protect the ongoing investigation. Agent Taylor, who was organizing the raid, received the final warrant but did not notice that it no longer included a list of items to be seized. As a result, although the magistrate judge had approved the list, the list was not present when the warrant was executed. The search was nevertheless conducted in conformity with the warrant, and there is no indication that items not listed were seized.

Once criminal proceedings were brought against Wright, he filed a motion to suppress the evidence gathered from his apartment. Pursuant to our decision in *Bartholomew*

*v. Commonwealth of Pennsylvania*, 221 F.3d 425 (3d Cir. 2000), the District Court held that the execution of a warrant without Agent Taylor's affidavit violated the Fourth Amendment's requirement that warrants "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Although the District Court found that Agent Taylor's culpability was "low," it read the Supreme Court's decision in *United States v. Leon*, 468 U.S. 897 (1984), as holding that the good-faith exception to the exclusionary rule could never excuse reliance on a facially invalid warrant. Consequently, it ordered the evidence suppressed.

On appeal, a panel of this Court vacated and remanded. The panel acknowledged that the good-faith exception was inapplicable under *Leon* because the warrant was facially invalid. It nevertheless held that the Supreme Court's more recent decision in *Herring v. United States*, 555 U.S. 135 (2009), required an additional analytical step before the exclusionary rule could be applied. Specifically, the District Court could not suppress the evidence unless it evaluated Agent Taylor's culpability and found that his conduct was at least grossly negligent.

The District Court denied the motion to suppress on remand, finding that Taylor's failure to review the warrant before executing it was a "simple mistake" that conferred no benefit on the Government and amounted at most to

negligence. Wright was subsequently convicted of drug offenses by a jury, and he filed the instant appeal.[1]

## II. Discussion

The parties agree that evidence was seized from Wright's apartment in violation of the Fourth Amendment. Thus, the sole question before us is whether the exclusionary rule requires its suppression. We hold that it does not.

### A. The Exclusionary Rule

Although the exclusionary rule was designed to deter Fourth Amendment violations, the heavy social costs of suppressing evidence counsel against its indiscriminate application. *See Davis v. United States*, 131 S. Ct. 2419, 2426 (2011). Accordingly, in *Leon*, the Supreme Court created a "good-faith exception" to the suppression remedy for "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." 468 U.S. at 913, 922. The *Leon* Court also observed, however, that "depending on the circumstances of the particular case, a warrant may be so facially deficient—i.e., in failing to particularize the place

---

[1] The District Court had subject-matter jurisdiction under 18 U.S.C. § 3231. We have jurisdiction to review the District Court's judgment of conviction pursuant to 28 U.S.C. § 1291. "We review factual determinations made on a motion to suppress for clear error and legal determinations de novo." *United States v. Harrison*, 689 F.3d 301, 306 (3d Cir. 2012), *cert. denied*, 133 S. Ct. 1616 (2013).

to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.* at 923.

The Supreme Court refined the analysis in *Herring*: "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." 555 U.S. at 144. As a result, "the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Id.* Simple, isolated negligence is insufficient to justify suppression. *See Davis*, 131 S. Ct. at 2427-28.

Our Court has synthesized these cases by explaining that when a warrant is "so facially deficient that it fail[s] to particularize . . . the things to be seized," the officers involved are usually at least "grossly negligent" and cannot avail themselves of the good-faith exception. *United States v. Tracey*, 597 F.3d 140, 151 (3d Cir. 2010). We recently clarified in *United States v. Franz*, however, that this is not a categorical rule. 772 F.3d at 144-47. "[I]n examining the totality of the circumstances, we consider not only any defects in the warrant but also the officer's conduct in obtaining and executing the warrant and what the officer knew or should have known." *Id.* at 147. Thus, even if a warrant is facially invalid, an assessment of the officers' culpability and the value of deterrence may counsel against suppression.

The federal agent who conducted the search in *Franz*, Agent Nardinger, believed that he could not give Franz the list of items to be seized because that list had been sealed. His

6

failure to make the list available violated the Fourth Amendment's particularity requirement. The Government argued, however, that the good-faith exception applied because Nardinger had made a simple mistake that was not sufficiently culpable or susceptible to deterrence. This Court agreed and affirmed the denial of Franz's motion to suppress.

We listed a number of factors in support of our conclusion. First, Nardinger "sought and obtained a valid warrant and acted in consultation with federal prosecutors." *Id.* Second, Nardinger had no intention of concealing the information that was sealed, as he verbally "explained to Franz what items the warrant authorized him to search for and seize." *Id.* at 148. Third, there was no evidence that the constitutional violation in question was "recurring or systematic," rather than an isolated mistake by an inexperienced agent. *Id.* Finally, the magistrate judge's order sealing the supporting documents to the warrant contained unclear language that Nardinger interpreted as prohibiting him from giving Franz the list of items to be seized. *Id.* at 148-49. Accordingly, we could not say that Nardinger acted deliberately, recklessly, or with gross negligence. To the contrary, his "conduct was, on the whole, objectively reasonable." *Id.* at 147.

## B. Wright's Motion to Suppress

As in *Franz*, our analysis here focuses on the culpability of the agents and prosecutors who failed to ensure that a list of items to be seized was attached to the warrant that was executed. Wright does not argue that anyone deliberately or recklessly violated his Fourth Amendment rights. He argues instead that Agent Taylor was grossly

7

negligent and, consequently, that deterrence is worth the price of suppression.

*Franz* is instructive but not directly on point. In both *Franz* and this case, the agents obtained valid warrants in consultation with federal prosecutors and seized only those items authorized by their warrants. In *Franz*, however, Agent Nardinger was inexperienced, and he understood the magistrate judge's sealing order as prohibiting him from giving Franz the list of items to be seized. We cannot say the same about Agent Taylor, who has extensive experience with search warrants and did not interpret the magistrate judge's sealing order as excusing compliance with the particularity requirement.

This is significant for two reasons. First, an "officer's knowledge and experience" bears on whether it was objectively reasonable for that officer to believe that the search was legal. *See Herring*, 555 U.S. at 145. Second, the Supreme Court has held that the exclusionary rule does not apply when an officer "reasonably relie[s] on the Magistrate's assurance that the warrant contain[s] an adequate description of the things to be seized and [i]s therefore valid." *Groh v. Ramirez*, 540 U.S. 551, 564 (2004) (describing *Massachusetts v. Sheppard*, 468 U.S. 981 (1984)). "Even though Nardinger was mistaken, his reliance on the sealing order mitigate[d] the blame that necessarily follow[ed] his error." *Franz*, 772 F.3d at 149. As a result, Agent Taylor is arguably more culpable than Agent Nardinger.

The agents' relative culpability does not, however, answer the question of whether Agent Taylor's conduct meets the standard for gross negligence. "'Gross negligence' is a nebulous term that is defined in a multitude of ways,

depending on the legal context and the jurisdiction." 57A Am. Jur. 2d Negligence § 227. This Court has explained that gross negligence has "been described as the want of even scant care and the failure to exercise even that care which a careless person would use." *Fialkowski v. Greenwich Home for Children, Inc.*, 921 F.2d 459, 462 (3d Cir. 1990) (internal quotation marks omitted). By contrast, ordinary negligence "means no more than a failure to measure up to the conduct of a reasonable person." *Id.* (internal quotation marks omitted).

Whether Taylor was "grossly" negligent or merely negligent in the "ordinary" sense is difficult to assess if we consult only the hornbook formulations of these terms. Did Taylor fail to exercise "reasonable care," or did his failure to read the warrant before executing it demonstrate the absence of even "scant care"? Fundamentally, the precautions we would expect an officer to take depend largely on what might happen if he failed to take them. The probable consequences of the failure to exercise care are certainly relevant to the value of deterrence. In addition, "the value of deterrence depends upon the strength of the incentive to commit the forbidden act." *Hudson v. Michigan*, 547 U.S. 586, 596 (2006). Accordingly, it makes sense to consider (1) the extent to which the violation in this case undermined the purposes of the Fourth Amendment and (2) what the Government gained from the violation.

The requirement that warrants particularly describe the things to be seized has a number of purposes. First, it provides "written assurance that the Magistrate actually found probable cause to search for, and to seize, every item mentioned." *Groh*, 540 U.S. at 560; *see also Tracey*, 597 F.3d

9

at 146. Second, it prevents "general searches" by confining the discretion of officers and authorizing them to seize only particular items. *Tracey*, 597 F.3d at 146. Third, it "informs the subject of the search 'of the lawful authority of the executing officer, his need to search, and the limits of his power to search.'" *Id.* (quoting *Groh*, 540 U.S. at 561).

The violation at issue here did not undermine the first two purposes of the particularity requirement. This was no general search, as Agent Taylor oversaw it and "assured that the [other] officers acted in accordance with the warrant's limits." *United States v. Wright*, Criminal No. 09-270-ALL, 2013 WL 3090304, at *9 (E.D. Pa. June 20, 2013). Wright does not argue that these limits were exceeded in any way.

Furthermore, we can be confident that the magistrate judge found probable cause to search for and seize every item listed in Agent Taylor's affidavit. When the warrant was approved, the affidavit was attached and expressly incorporated by reference in the space for identifying the items to be seized. Indeed, in addition to signing the warrant, the magistrate signed the affidavit, albeit for the purpose of certifying that Agent Taylor had sworn to it. *See United States v. Allen*, 625 F.3d 830, 839 (5th Cir. 2010) (noting that "the magistrate judge's signature on the affidavit reduces the concern that he did not agree to the scope of the search as defined and limited therein").

Wright's reliance on *Groh*, 540 U.S. 551, and *Virgin Islands v. John*, 654 F.3d 412 (3d Cir. 2011), is misplaced for this reason. In *Groh*, the Supreme Court denied qualified immunity to officers who relied on a warrant that failed to particularly describe the items to be seized. The portion of the

10

warrant that called for a description of the items to be seized instead described the house to be searched. Although an attached affidavit contained a list of items to be seized, it was not expressly incorporated into the warrant itself. Consequently, "[t]he mere fact that the Magistrate issued [the] warrant d[id] not necessarily establish that he agreed that the scope of the search should be as broad as the affiant's request." *Id.* at 561. In *John*, the agent's affidavit was "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" 654 F.3d at 418 (quoting *Tracey*, 597 F.3d at 151). Here, by contrast, there is no reason to believe that any aspect of the search was unsupported by probable cause.

The failure to retain the list of items to be seized did undercut the third purpose of the particularity requirement, as Wright was not informed of the limits of the agents' power to search. Here, too, *Franz* presents a more compelling case for application of the good-faith exception: Agent Nardinger verbally explained to Franz what items the warrant authorized him to search for and seize. *See Franz*, 772 F.3d at 148.

The importance of this distinction is, however, questionable. The Supreme Court has observed that "neither the Fourth Amendment nor Federal Rule of Criminal Procedure 41" requires "the executing officer [to] present the property owner with a copy of the warrant before conducting his search." *United States v. Grubbs*, 547 U.S. 90, 98-99 (2006). The Fourth Amendment "protects property owners not by giving them license to engage the police in a debate over the basis for the warrant, but by interposing, [before the search], the 'deliberate, impartial judgment of a judicial officer . . . between the citizen and the police,' and by

11

providing, [after the search], a right to suppress evidence improperly obtained and a cause of action for damages." *Id.* at 99 (second alteration in original) (quoting *Wong Sun v. United States*, 371 U.S. 471, 481-482 (1963)). It is therefore unclear how Wright was harmed by his inability to peruse the list of items the Government intended to seize at the time of the raid on his apartment.

It follows that the Government gained nothing from the Fourth Amendment violation. Even if the list of items to be seized had been present at the scene, the agents would have collected precisely the same evidence, and Wright would have been unable to stop them. The violation in this case had no impact on the evidence that could be deployed against Wright at trial.

Wright is undoubtedly correct to point out that suppression would incentivize the Government to carefully scrutinize each warrant before it is executed. The purpose of imposing tort liability for negligence is, after all, to encourage individuals to exercise reasonable care. In the context of suppression, however, the Supreme Court has unequivocally held that deterring isolated negligence is not worth the social cost of excluded evidence. *See Herring*, 555 U.S. at 144 n.4, 147-48. Only if mistakes of this nature recur with some frequency will a criminal defendant be in a position to argue that the calculus has changed. *See id.* at 144.

## III. Conclusion

For the foregoing reasons, we conclude that the District Court was correct to hold that Agent Taylor was not sufficiently culpable for the costs of suppression to outweigh

12

its benefits. The District Court's denial of Wright's motion to suppress will be affirmed.