**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2809
_____

UNITED STATES OF AMERICA

v.

LACEY GRAVES,
                                    Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. Action No. 2:06-cr-00095-1)
District Judge:  Honorable Jan E. DuBois

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 25, 2018
Before:  SHWARTZ, KRAUSE, and FUENTES, <u>Circuit</u> <u>Judges</u>

(Opinion filed: October 9, 2018 )
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Lacey Graves, who was convicted by a jury of bank robbery, appeals from the District Court's order denying his motion to vacate his sentence pursuant to 28 U.S.C. § 2255. For the following reasons, we will affirm the judgment of the District Court.

I.

On November 9, 2007, Lacey Graves was convicted by a jury of armed bank robbery in violation of 18 U.S.C. § 2113(d). Graves was sentenced to a term of imprisonment of fifteen years, five years of supervised release, and financial restitution. After pursuing an unsuccessful appeal, see United States v. Graves, 373 F. App'x 229 (3d Cir. 2010), Graves filed a motion to vacate his sentence under 28 U.S.C. § 2255. In 2013, the District Court denied Graves' § 2255 motion but issued a certificate of appealability ("COA") on one issue, whether trial counsel was ineffective for failing to move to suppress evidence found in the search of the Neal residence[1] in light of the Government's failure to list the items to be seized or incorporate a list of such items in the search warrant.[2] Dkt # 260.

---

[1] The evidence found at the home of Leslie Neal, Graves' girlfriend, included Graves' New Balance sneakers, which a forensic examiner with the Federal Bureau of Investigation testified could have been responsible for the footwear impressions found at the crime scene, as well as purchase receipts totaling $224.03.

[2] The District Court ruled that counsel was deficient in failing to move to suppress a facially defective warrant because the motion to suppress would have been granted under then-existing case law. However, the District Court denied the ineffectiveness claim on the basis that Graves did not prove prejudice. See Strickland v. Washington, 466 U.S. 668, 687 (1984).

On appeal, we vacated the District Court's order with respect to the suppression issue and remanded the case in light of United States v. Wright, 777 F.3d 635 (3d Cir. 2015) ("Wright II"), with instructions to conduct an evidentiary hearing on the culpability of the officer who prepared the warrant application.[3] See United States v. Graves, 613 F. App'x 157, 163 (3d Cir. 2015). We determined that, pursuant to Wright II, in which we clarified that "even if a warrant is facially invalid, an assessment of the officers' culpability and the value of deterrence may counsel against suppression," 77 F.3d at 639, the District Court erred in concluding that a motion to suppress would have been granted without making findings of fact concerning the officer's culpability. Additionally, we ruled that the District Court incorrectly determined that, had the motion to suppress been granted, Graves failed to show prejudice.

The District Court subsequently conducted an evidentiary hearing on the culpability of the officer. Based on Officer Vincent's testimony, the District Court denied Graves' § 2255 motion. The District Court concluded that "Vincent's violation of the Fourth Amendment was the result of mere negligence and not more culpable behavior." Dkt # 284, at 18. Therefore, the Court held that "Graves [did] not show[] prejudice because, under current law, the evidence seized during the search of the home would not be excluded under the exclusionary rule." Id. at 19. Graves appealed and filed an application for a COA with this Court, which we granted on the issue whether counsel

---

[3] On appeal, we expanded Graves' COA to include an additional claim, whether trial counsel was ineffective for failing to call Graves' girlfriend as a witness. We affirmed the District Court's order as to that issue. See United States v. Graves, 613 F. App'x 157, 163 (3d Cir. 2015).

was ineffective for failing to move to suppress evidence found pursuant to a facially invalid warrant, including the question whether the conduct of the officer who prepared and executed the warrant was sufficiently culpable, in light of Wright II.

## II.

We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. In a § 2255 proceeding, we exercise plenary review over the District Court's legal conclusions and apply a clear error standard to its findings of fact. United States v. Travillion, 759 F.3d 281, 289 (3d Cir. 2014). Upon review, we conclude that the District Court properly denied Graves' motion. As the District Court determined, Graves failed to establish that trial counsel was ineffective for failing to move to suppress evidence found pursuant to a facially invalid warrant, because the motion would have been denied under current law. See Strickland, 466 U.S. at 687 (requiring a movant presenting an ineffectiveness claim to establish (1) that counsel's performance was deficient; and (2) that his defense was prejudiced such that there is a reasonable probability that, but for counsel's error, the result would have been different).

In Wright II, we noted that the Supreme Court's analysis in Herring v. United States, 555 U.S. 135 (2009), required sufficiently culpable and sufficiently deliberate conduct on the part of the officers in order to warrant suppression, and that "isolated negligence is insufficient to warrant suppression." Wright II, 777 F.3d at 638 (citing Davis v. United States, 564 U.S. 229, 238 (2011)). We explained that while officers are "usually at least 'grossly negligent'" if "a warrant is 'so facially deficient that it fail[s] to particularize . . . the things to seized,' . . . that is not a categorical rule." Wright II, 777

4

F.3d at 639 (quoting United States v. Tracey, 597 F.3d 140, 151 (3d Cir. 2010), and citing United States v. Franz, 772 F.3d 134, 144–47 (3d Cir. 2014)). We thus provided a test for determining whether evidence found pursuant to a facially invalid warrant should be suppressed, taking into consideration the culpability of the officer who prepared the application.[4] Specifically, a court should consider "(1) the extent to which the violation in this case undermined the purposes of the Fourth Amendment and (2) what the Government gained from the violation." Id. at 640. Under the first part of this analysis, three main purposes of the Fourth Amendment should be taken into consideration: (1) providing clear assurance that the magistrate judge found probable cause to search and seize each item mentioned; (2) preventing general searches and limiting the discretion of the officers by authorizing them to seize only particular items; and (3) informing the subject of the search of the legal authority of the executing officer, the need to search, and the limits of the search. Id. (citing Groh v. Ramirez, 540 U.S. 551, 560–61 (2004); Tracey, 597 F.3d at 146).

In the present case, the warrant at issue was facially defective because it failed to indicate the items to be seized. Prior to Graves' arrest, Officer Vincent secured a search warrant to search the residence of Leslie Neal; where Graves often stayed. The space for

---

[4] In our analysis of whether the officer in Wright II was sufficiently culpable, we addressed the difference between gross and ordinary negligence. As we have previously explained, gross negligence refers to "the failure to exercise even that care which a careless personal would use," while ordinary negligence refers to "no more than a failure to measure up to the conduct of a reasonable person." Fialkowski v. Greenwich Home for Children, Inc., 921 F.2d 459, 462 (3d Cir. 1990) (citation and internal quotation marks omitted).

5

a description of the property to be seized was left blank on the warrant. An "Attachment B" was appended to the warrant, listing the items to be seized, but was not referenced in the warrant itself. During the evidentiary hearing, Vincent testified that he had prepared the applications for the search warrant in consultation with an Assistant United States Attorney. Appellant's Appendix, at 32–33 (PDF page numbers). He stated that he did not notice that the space for a description for the property to be seized was left blank on the warrant and application. Id. at 35. He further stated that the blank space should have contained the phrase, "See Attachment B." Id. at 34, 51. Vincent also testified that when the warrant package was presented to the United States Magistrate Judge for approval, the package included Attachment B, and, that the Magistrate Judge reviewed the package before signing it (although Vincent did not have a specific recollection of whether the Magistrate Judge reviewed Attachment B). Id. at 43, 46–48. Finally, Vincent testified that when the search warrant was executed, he went over the search warrant with the owner of the residence, including Attachment B, and left a copy of the warrant and Attachment B at the residence. Id. at 37.

We agree with the District Court that the testimony of Vincent confirms that the failure of the search warrant to reference Attachment B was a mistake, likely amounting to negligence, but not more culpable behavior. Vincent worked in consultation with the United States Attorney's Office to draft the warrant and supporting documents, and ultimately obtained approval of the warrant by the Magistrate Judge. See Tracey, 597 F.3d at 152–53. There is no evidence to suggest that Vincent had the intention of concealing the information contained in Attachment B, since it was provided in the

6

warrant package to the Magistrate Judge, and left at the residence. See Franz, 772 F.3d at 147–48. Additionally, there is no evidence to establish that this was a recurring or systemic violation instead of an isolated mistake by the officer. See Herring, 555 U.S. at 144, 147–48. Graves argues that Vincent's position as a well-trained and experienced agent makes him more culpable, and he is correct that "an officer's knowledge and experience bears on whether it was objectively reasonable for that officer to believe that the search was legal." Wright II, 777 F.3d at 639 (citation and internal quotation marks omitted). However, it does not directly follow that Vincent's mistake amounts to gross negligence. See id. at 640. Instead, considering the totality of the circumstances, we cannot say that Vincent acted deliberately, recklessly, or with gross negligence.[5] See id. at 639 (citing Franz, 772 F.3d at 147).

In analyzing the extent to which the violation in this case undermined the purposes of the Fourth Amendment, see Wright II, 777 F.3d at 640, we agree with the analysis provided by the District Court. The first purpose, to provide written assurance that the magistrate judge found probable cause to support the warrant application, was likely

---

[5] Graves additionally asserts that although Attachment B did not refer to receipts of evidence of financial gain, during the search, officers seized receipts from the residence, totaling $224.03. He argues that this is another mistake by Officer Vincent. At the evidentiary hearing, Vincent agreed that he had mistakenly failed to include receipts or evidence of financial gain from the robbery in the Attachment B list and that evidence of financial gain is usually included as a matter of course. Appellant's Appendix, at 65 (PDF page number). These facts do not change the conclusion that Vincent's conduct was not more culpable than negligence. Additionally, we previously determined that the seizure of the receipts was inconsequential, since the Government also introduced receipts (found pursuant to a different warrant) for over $1,300. See Graves, 613 F. App'x at 161 n.7.

7

undermined by the officer's conduct since there was no evidence provided to show that the Magistrate Judge examined Attachment B and agreed that there was probable cause to seize each item identified on the list. However, the remaining purposes of the Fourth Amendment were not undermined by the officer's conduct. The search was sufficiently constrained so as not to violate the particularity requirement's purpose of preventing general searches, and the officer sufficiently informed the subject of the legal authority of the search, the need to search, and the limits of the search. Finally, it is clear that the Government did not gain anything as a result of the violation, since, had Attachment B been incorporated in the warrant, the same evidence would have been presented at trial.

We conclude that the District Court was correct to hold that the officer was not sufficiently culpable for the costs of suppression to outweigh its benefits and that a motion to suppress the evidence seized during the search would therefore be denied under current law. As noted by the District Court, "[t]he Fourth Amendment violation in this case was the result of a 'misstep.'" Dkt # 285, at 19 (quoting Franz, 772 F.3d at 149). Therefore, Graves has failed to show that he was prejudiced by counsel's conduct, since counsel's performance did not deny him of a substantive or procedural right. See Williams v. Taylor, 529 U.S. 362, 392–93 (2000).

In sum, we affirm the District Court's order denying Graves' § 2255 motion.