# United States Court of Appeals
## For the First Circuit

No. 24-1282

UNITED STATES OF AMERICA,

Appellant,

v.

EDGAR MEDINA, ANDRES GARAY, and RONALD HALL,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., U.S. District Judge]

Before

Rikelman, Selya, and Kayatta,
Circuit Judges.

Lauren S. Zurier, Assistant United States Attorney, with whom
Zachary A. Cunha, United States Attorney, was on brief, for
appellant.
J. Richard Ratcliffe, with whom Ratcliffe Harten Galamaga
LLP, Christoper DeMayo, Law Office of Christoper DeMayo, Jason
Knight, and Law Office of Jason Knight were on brief, for
appellees.

January 15, 2025

**SELYA**, **Circuit Judge**.    In this criminal appeal, the government seeks to set aside an order suppressing evidence that it wishes to use against defendants Edgar Medina, Andres Garay, and Ronald Hall (appellees here).[1]  The evidence had been obtained pursuant to two warrants.  The district court not only found these warrants lacking in probable cause but also rejected the government's argument that any infirmity in the warrants did not require suppression under the good faith doctrine articulated in United States v. Leon, 468 U.S. 897 (1984).  We conclude that the officer executing the warrants did so in good faith and, thus, we vacate the suppression order and remand the case for further proceedings consistent with this opinion.

## I

We briefly rehearse the relevant facts and travel of the case.  We rely on the district court's findings of fact unless they are clearly erroneous.[2]  See United States v. Ferreras, 192 F.3d 5, 9 (1st Cir. 1999).

_____

[1] There are two additional defendants — Alijah Parsons and Irving Medina — who are not parties to this appeal.  References in this opinion to "Medina" are to Edgar Medina.  References to "the defendants" encompass all of the defendants named in the indictment.    Such references are to be distinguished from references to "the appellees," which encompass only the three defendants who are parties to this appeal.

[2] The district court noted that the facts stated in its rescript regarding the underlying crimes did not constitute formal findings of fact.  See United States v. Medina, 712 F. Supp. 3d 226, 233 n.3 (D.R.I. 2024).  Rather, the court "only highlight[ed] the events necessary to discuss the challenged warrants" based on

On June 1, 2021, two masked men, later alleged to be Hall and Medina, abducted a United States postal worker at gunpoint in order to interrogate him about a package that was delivered with missing contents. See United States v. Medina, 712 F. Supp. 3d 226, 233 (D.R.I. 2024). An investigation into the abduction by the United States Postal Inspection Service (USPIS) indicated that the missing package had contained illicit drugs. See id.

In the course of an undercover operation, law enforcement officers arrested Hall, Garay, and Medina when the men tried to collect other cocaine-laden packages. See id. At the same time, the officers seized five telephones carried by the defendants. See id. at 234. The officers then procured search warrants for the contents of the five telephones, and later for the historical cell site location information (CSLI) relating to two of the defendants. See id. at 233-34.

Partially on the basis of this evidence, a federal grand jury sitting in the District of Rhode Island indicted the five defendants on charges of kidnapping, conspiracy, attempt, and possession with intent to distribute illicit drugs. See id. at 234; see also 18 U.S.C. § 1201(a)(5) (kidnapping); 21 U.S.C. § 846 (conspiracy and attempt); id. § 841(a)(1) (possession with intent

"affidavits." Id. We follow suit and draw the facts regarding the underlying crimes from the district court's rescript.

- 3 -

to distribute).  One defendant, Irving Medina, entered a guilty plea to the conspiracy charge.  The other defendants await trial.

A number of evidentiary issues surrounding the USPIS investigation were presented to the district court as part of the pretrial skirmishing.  See Medina, 712 F. Supp. 3d 226.  Two of those issues are relevant here:  the appellees challenged the warrant to search the phones found during the arrest (the five phones warrant) and the warrant for Garay's CSLI (the CSLI warrant).  Id. at 248, 260.  The warrant applications were prepared by USPIS Inspector Richard Atwood.  They were filed with the court, however, by a legal assistant in the U.S. Attorney's Office for the District of Rhode Island (USAO).

Both of these warrant applications suffered from similar defects:  the warrant applications were not filed with referenced exhibits and therefore lacked significant facts.  See id.  With respect to the five phones warrant, the primary affidavit was properly attached — but that affidavit referenced two other affidavits, Exhibits A and B, which by mistake were not attached to the filing.  The primary affidavit, sworn to by Inspector Atwood, stated:

> On June 7, 2021, I submitted an affidavit in support of an application for search warrant, (See Exhibit A), and on June 9, 2021, I submitted an Affidavit in support of Criminal Complaints against Edgar MEDINA; Andres GARAY; and Ronald HALL. (See Exhibit B).  I hereby

- 4 -

> incorporate all background and facts from those Affidavits into this Affidavit.

Both exhibits had been sworn out in the preceding days before the same magistrate judge who was evaluating the five phones warrant.

With respect to Garay's CSLI, the warrant application relied on an affidavit attached to a previous warrant, which itself relied on an affidavit attached to an even earlier warrant. See id. at 260. It was that seminal affidavit — the first in time — that was inadvertently not attached to the application for the CSLI warrant. See id. The affidavit filed in this case stated: "I thus submit this affidavit . . . and hereby incorporate by reference the entire affidavit I previously submitted in support of that search warrant to establish probable cause."[3]

The same magistrate judge reviewed and signed the first and third warrant applications; a different magistrate judge reviewed the intermediary warrant application. The record does not indicate that Inspector Atwood knew when he executed either the five phones warrant or the warrant for Garay's CSLI that the affidavits had not been attached.[4]

---

[3] At this stage of the proceedings, there is no dispute about whether the intermediary warrant was valid. For present purposes, we assume that the affidavit that is missing here was properly incorporated into the intermediary warrant application.

[4] The parties established at oral argument that all of the documents at issue here were filed and distributed electronically in PDF format.

The appellees sought suppression of the evidence obtained pursuant to these warrants on the basis that the applications lacked probable cause due to the above-described filing defects. The district court agreed and suppressed the evidence obtained pursuant to both of these warrants. See id. at 248-51, 260-61. This timely appeal followed.

**II**

We have jurisdiction over this appeal pursuant to 18 U.S.C. § 3731, which allows the government to take interlocutory appeals from suppression orders in criminal cases. "Our review of the decision whether to grant or deny a suppression motion is 'plenary.'" United States v. DeMasi, 40 F.3d 1306, 1311 (1st Cir. 1994) (quoting United States v. Sanchez, 943 F.2d 110, 112 (1st Cir. 1991)). Findings of fact, though, are reviewed only for clear error. See id.

It is an abecedarian principle that probable cause is required for a warrant to be valid. See Wilson v. City of Boston, 421 F.3d 45, 54 (1st Cir. 2005) (citing U.S. Const. amend. IV). Probable cause requires that "particular facts and circumstances" support the warrant. United States v. Graf, 784 F.3d 1, 7 (1st Cir. 2015) (quoting Franks v. Delaware, 438 U.S. 154, 165 (1978)). Specifically, "[a] finding of probable cause 'demands proof sufficient to support a fair probability that a crime has been committed and that evidence of that crime is likely to be found

within the objects to be searched.'" United States v. Sheehan, 70 F.4th 36, 44 (1st Cir. 2023) (quoting United States v. Coombs, 857 F.3d 439, 446 (1st Cir. 2017)). "The probable cause standard 'is not a high bar.'" United States v. Adams, 971 F.3d 22, 32 (1st Cir. 2020) (quoting Kaley v. United States, 571 U.S. 320, 338 (2014)). But as the Supreme Court has said, "[s]ufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." Illinois v. Gates, 462 U.S. 213, 239 (1983).

While probable cause is typically shown on the face of the warrant, a separate affidavit may be used to supply the facts for a warrant "if the affidavit accompanies the warrant, and the warrant uses suitable words of reference which incorporate the affidavit." Sheehan, 70 F.4th at 50 (emphasis omitted) (quoting United States v. Moss, 936 F.3d 52, 59 n.9 (1st Cir. 2019)). Incorporation is a commonly accepted practice. See Groh v. Ramirez, 540 U.S. 551, 557-58 (2004) (noting that "most Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit"). In order for the incorporated document to contribute to the probable cause calculus, though, incorporation must be done properly. See Sheehan, 70 F.4th at 50. Thus, "unattached and external materials"

may not be considered by the magistrate judge in the issuance of a warrant.  Id.

If a warrant lacks probable cause, whether as a result of botched incorporation or otherwise, it may be suppressed under the so-called "exclusionary rule."  United States v. D'Andrea, 648 F.3d 1, 6 (1st Cir. 2011).  This rule forecloses consideration of evidence that is gathered in violation of a defendant's Fourth Amendment rights.  See id.  Withal, the exclusionary rule is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved."  Leon, 468 U.S. at 906 (quoting United States v. Calandra, 414 U.S. 338, 348 (1974)).

Even while upholding the use of the exclusionary rule, we have recognized the "substantial social costs" of suppressing evidence of crimes.  United States v. Levin, 874 F.3d 316, 322 (1st Cir. 2017) (quoting Utah v. Strieff, 579 U.S. 232, 237 (2016)).  With this in mind, the Supreme Court has made clear that suppression is improper "when law enforcement officers have acted in objective good faith or their transgressions have been minor."  Leon, 468 U.S. at 908.  In practice, then, "the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence," Herring v. United States, 555 U.S. 135, 144 (2009),

rather than "simple, 'isolated' negligence," Davis v. United States, 564 U.S. 229, 238 (2011) (quoting Herring, 555 U.S. at 137).

To be sure, there are circumstances in which the good faith rule does not apply. Such circumstances include cases in which "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; cases in which "the issuing magistrate wholly abandoned his judicial role"; and cases in which the warrant is "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" Leon, 468 U.S. at 923 (quoting Brown v. Illinois, 422 U.S. 590, 611 (1975) (Powell, J., concurring in part)). What is more, the exclusionary rule can apply to simple negligence when that negligence is systemic or part of a pattern, rather than isolated. See Davis, 564 U.S. at 238.

### III

The parties do not dispute that the warrant applications, as filed, failed to include the underlying affidavits. Moreover, the government has not argued before us that the warrant applications, as filed, had a sufficient showing of probable cause in the absence of the missing affidavits. Because no party argues that the evidence was not seized in

violation of the Fourth Amendment, "the sole question before us is whether the exclusionary rule requires its suppression." United States v. Wright, 777 F.3d 635, 638 (3d Cir. 2015). We think that the good faith rule applies and, therefore, the evidence should not have been suppressed.

## A

The district court's primary ground for finding that the good faith exception did not apply was that, under Leon, each warrant was "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" 468 U.S. at 923 (quoting Brown, 422 U.S. at 611 (Powell, J., concurring in part)). We do not agree.

To begin, it was reasonable for Inspector Atwood to believe that the warrant applications included the affidavits that he had incorporated by reference. He did not have any cause to believe that the affidavits were not attached. Nor did he have any motivation to conceal the full facts from the magistrate judge.

Of course, before an officer like Inspector Atwood executes a search warrant, he has an obligation "to ensure the search is lawfully authorized and lawfully conducted." Groh, 540 U.S. at 563. Here — although he may have failed to scroll fully through the PDF of the approved warrants upon receiving them — his failure to do so did not amount to more than run-of-the-mill negligence. After all, he had every reason to conclude that the

- 10 -

warrants were supported by probable cause because he had drafted the affidavits that the USAO had failed to attach as an exhibit. Thus, his conduct was not "'deliberate,' 'reckless,' or 'grossly negligent.'" Davis, 564 U.S. at 238 (quoting Herring, 555 U.S. at 144); see Wright, 777 F.3d at 641-42 (explaining that failure to review warrant after USAO removed list of items to be seized was "isolated negligence").

An essential fact here is that Inspector Atwood was the agent who drafted the affidavits, applied for the warrants, and executed the searches. Thus, Inspector Atwood knew that he had submitted to the USAO the exhibits that were needed to ensure that the affidavits were sufficient.[5]

What is more, Inspector Atwood's reliance on the USAO to file the completed warrant applications properly was reasonable. This fact has decretory significance because it is the executing officer's conduct that is the focus when evaluating whether that officer acted in good faith. After all, "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it." Herring, 555 U.S. at 144.

---

[5] If any other officer had executed the warrants, he would have had only the barebones warrants and deficient primary affidavits. In such a case, it seems unlikely that a good faith defense would be available.

- 11 -

It is true that "[w]e do not read Herring to require an additional or individualized assessment of the deliberateness and culpability of police conduct," Sheehan, 70 F.4th at 54, and unintentional mistakes may still preclude the application of the good faith exception. Even so, it remains relevant to our inquiry that the warrant application was not filed by Inspector Atwood but, rather, by the USAO and that Inspector Atwood lacked any awareness of the error. Moreover — as the government has pointed out — sometimes reliance on prosecutors is, itself, evidence of good faith. See, e.g., United States v. Matthews, 12 F.4th 647, 656 (7th Cir. 2021) ("Consulting with [a] prosecutorial officer certainly is one step a responsible and diligent officer can take, and such consultation is, in many respects, exactly what Leon's good-faith exception expects of law enforcement."). Encouraging such steps holds weight in the cost-benefit analysis of suppression.

**B**

In ruling to the contrary, the district court relied largely on our decision in Sheehan. This reliance was misplaced. There are at least two distinguishing facts. We briefly recount the facts in Sheehan as background and then limn the distinctions.

In Sheehan, the defendant was being investigated for a number of crimes relating to an alleged sexual assault of a minor. See 70 F.4th at 40. During the course of these investigations and

pursuant to a warrant, police officers seized and searched a cell phone found at the defendant's home. See id. at 40-41. That warrant was sought with probable cause established for only the crimes of identity fraud, unauthorized access to a computer, witness intimidation, and impersonation of a police officer. See id. The police subsequently sought a search warrant for the cell phone, directed specifically at obtaining evidence of possession of child pornography. See id. at 41-42. The latter warrant application properly incorporated an affidavit, which

> stated that because [the officer] had submitted the affidavit 'for the limited purpose of securing a search warrant,' she had refrained from including 'each and every fact known to [her] concerning th[e] investigation.' Instead, the affidavit 'set forth only those facts that [she] believe[d] [were] sufficient to establish the requisite probable cause for a search warrant.

Id. (first alteration added). In addition, the affidavit "referred to [the warrant used as a means to seize the cell phone] by its docket number," which the government argued "implicitly incorporated" the earlier warrant. Id. at 49-50.

This account illuminates the differences between Sheehan and this case. First, as in Sheehan, the primary affidavits here were properly attached and incorporated. But the primary affidavit in Sheehan set forth boilerplate language limiting the facts to those set forth in the primary affidavit and had no other language indicating that any other facts were meant to be included. Id. at

- 13 -

41-42. In other words, the officer executing the warrant knew which facts were properly included in the warrant application and intentionally withheld other known facts.

The important distinction for the purposes of the good faith determination is that here, unlike in Sheehan, the investigating officer had no knowledge that the referenced affidavits were not properly attached by the USAO. In fact, he manifestly intended for them to be included.

Second, the incorporation dispute in Sheehan is markedly different than the one in this case. In Sheehan, "[t]he government concede[d] that the incorporation it envision[ed] was not done explicitly" but argued that "the mere mention of a document external to an affidavit . . . implicitly incorporates the contents of that document." Id. at 49-50. We disagreed, holding that the case law on the issue "require[s] language of some kind that expressly directs the reader's attention to the purportedly incorporated materials." Id. at 50. Just so here. The properly attached affidavit for the five phones warrant stated: "I hereby incorporate all background and facts from [Exhibits A and B]." This could not plausibly be construed as anything other than words of express incorporation. So, too, the properly attached affidavit for the CSLI warrant stated: "I thus submit this affidavit . . . and hereby incorporate by reference the entire affidavit I previously submitted in support of that search warrant

to establish probable cause."  This is precisely the kind of explicit language that was lacking in Sheehan.

We hasten to add that we do not disturb Sheehan's holding that incorporation "require[s] both suitable words to that effect and the attachment of the affidavit" for probable cause to be properly established.  Id.  These requirements were clearly not satisfied here — and in any event, the government does not argue in this court that the probable cause bar was cleared.  Instead, in differentiating this case from Sheehan, we cut with a scalpel, not with an axe.  This case hovers near the outer limit of where the good faith exception can apply, and Sheehan toes the other side of that line.

Here, we think that the differences discussed above are significant enough to demand a different outcome.  In applying the good faith exception, we believe that a clerical error that was not committed by the investigating officer comes within the ambit of minor transgressions.  See Leon, 468 U.S. at 908.

### C

In addition to its reliance on Sheehan, the district court identified an alternative ground on which to find a lack of good faith.  It posited that the failure to attach the purportedly incorporated materials, even if simply negligent, constituted a systemic error.  Under Davis, such a finding, if supportable, would

- 15 -

be a sufficient ground for suppressing the evidence.  See 564 U.S. at 238.

We disagree with the district court's conclusion that the error was systemic.  As a start, a single instance of negligence is insufficient to constitute systemic rather than isolated negligence.  See Herring, 555 U.S. at 147 (stating error was not systemic when witnesses testified that they could remember "no similar [error] ever happening on their watch"); United States v. Campbell, 603 F.3d 1218, 1235 (10th Cir. 2010) (holding that because the "[d]efendant ha[d] demonstrated at most a single instance of an arguably negligent [error,] . . . [h]e ha[d] not demonstrated . . . 'recurring or systemic negligence'" (quoting Herring, 555 U.S. at 144)).  Here, though, the parties dispute the number of violations necessary to bring conduct into the category of systemic error.  And the case law does not provide us with a hard-and-fast answer to this inquiry.  Compare Wright, 777 F.3d at 642 (holding that violations must occur "with some frequency"), with United States v. Booker, 728 F.3d 535, 548 (6th Cir. 2013) (holding that three instances in three years was "recurring behavior").

In the end, however, this case does not require us to commit to some exact number.  At the time of the execution of the five phones warrant, there had not been any previous failures of

this nature that caused a defective warrant.[6]  At the time of the CSLI warrant, there had only been one such failure:  the five phones warrant.  And — as the government observes — there were dozens of adequate warrant applications in the investigation.  What is more, Inspector Atwood was not aware of the problem at the time of execution of either warrant.  Thus, it is enough to say that these two instances of negligence, standing alone, are insufficient to overcome a finding of good faith.

**IV**

We need go no further.  For the reasons elucidated above, we conclude that the motions to suppress were granted in error. The district court's order of suppression is <u>vacated</u> and the case is <u>remanded</u> to the district court for further proceedings consistent with this opinion.

<u>**So Ordered**</u>.

---

[6] The appellees argue that there were other instances of this kind of failure to attach exhibits in filings to the court that did not result in constitutional violations.  They urge us to consider these instances in our analysis.  We agree with the government's reading of <u>Herring</u> that these other instances are not relevant to our analysis and that the relevant inquiry is the recurrence of constitutional violations.  <u>See</u> 555 U.S. at 146-47 (describing systemic error by collecting cases that reference patterns of constitutional violations).